HOOD, Judge.
This is a tort action instituted by Mrs. Leon A. White, arising out of a motor vehicle accident which occurred in Concordia Parish on June 13, 1958. The suit was originally instituted against a number of parties, but, because of settlements and other reasons, it has been dismissed as to all defendants except Shreveport Chemical Enterprises, Inc., and its public liability insurer, Fidelity and Casualty Company of New York.
The case was tried by jury, and the trial resulted in a verdict for plaintiff, and against both defendants, for the sum of $25,000.00. In response to a motion filed by defendants, the District Court decreed that this award was subject to a credit of $16,-750.00, and the court denied a motion filed by plaintiff for an additur. A formal judgment in favor of plaintiff was then read and signed for the amount of the verdict, less the above-mentioned credit. Both plaintiff and defendants have appealed from that judgment.
The accident which gave rise to this suit occurred on a straight, hard surfaced, heavily traveled highway. Plaintiff at that time was riding as a guest passenger in an automobile being driven by her husband, Leon A. White. The White automobile, while traveling in an easterly direction on that highway, collided with the rear end of a trailer which was carrying a 1,000-gallon tank of liquid ammonia fertilizer and which was being pulled in the same direction on that highway by a tractor driven by J. W. Hudspeth. The tractor and the trailer were owned by Lonnie L. Bradford, and the tank being carried on the trailer was owned by defendant and was being leased to Bradford. Hudspeth, the driver of the tractor, was an employee of Bradford. The force of the collision caused the rear end of the White automobile to swing around into the west bound lane of traffic, where it was struck by another automobile which was being driven in a westerly direction in its proper lane of traffic. Mrs. White sustained serious personal injuries as a result of this collision.
The accident occurred about 7:30 p. m., and the evidence indicates that it was dark enough at that time to require motor vehicles to use lights. The tractor involved in the collision was equipped with one red taillight which was burning at the time of the accident, but a motorist approaching from the rear could not see this taillight because his view of it was obstructed by the trailer and tank. There were no taillights on the trailer or the tank. Plaintiff contends that Hudspeth was negligent in driving the tractor and in towing the trailer on a public highway at night without proper lights, and in failing to keep the tractor under proper control.
One of the important issues presented in this case is whether Bradford, the owner of the tractor and trailer, or Hudspeth, the driver, were agents or employees of the defendant, Shreveport Chemical Enterprises, Inc., or whether any legal relationship ex *877 isted between those parties which would make the defendant responsible for the acts of Bradford or Hudspeth.
Defendants acknowledge that Shreveport Chemical Enterprises, Inc., merged with Dixie Liquid Fertilizer Company, Inc., on June 25, 1956, and that the name “Dixie Liquid Fertilizer” was retained as a trade name by the merged companies for marketing purposes. They further acknowledge that Dixie Liquid Fertilizer Company, Inc., and Shreveport Chemical Enterprises, Inc., are the same entity, and that the acts or liability of one may be considered as the acts or liability of the other.
The evidence establishes that since 1956 Bradford has been engaged in the business of selling and distributing anhydrous ammonia fertilizer to farmers in the vicinity of Jena, Louisiana. On November 13, 1956, he entered into a written contract with Dixie Liquid Fertilizer Company, Inc., under the terms of which Bradford leased from that company two 1,000-gallon tanks to be used for hauling liquid ammonia fertilizer. This contract contains the following provisions:
“The Company shall have the privilege of filling any trailer tanks furnished under this agreement between January 31st and February 28th of each year either by delivery truck or at Company’s bulk storage plant, whichever method of delivery is regularly used in serving Customer. Ammonia delivered into trailer tank storage during February must be paid for in accordance with regular terms and must in any case be paid for no later than March 10th. Customer agrees to return tank to Company’s premises by August 1st each year unless otherwise agreed upon. It is also agreed that if Customer fails to return equipment by August 1st even though requested to do so by the Company, that the Company shall under this agreement be permitted to pick up the equipment and bill the Customer with a charge of $30.00 for the expenses incurred.
“Customer shall have full and complete control of and he exclusively responsible for the equipment covered under this agreement during the period the agreement remains in effect, except for periods when equipment is located on premises of the Company. Customer shall be responsible for ammonia inventory loss from this equipment, at all times and for any cause whatsoever, except Company’s negligence. Customer shall ‘hold harmless’ the Company from any claims arising out of accidents causing property damage or bodily injury connected with Company’s equipment. Company agrees to maintain equipment in good condition in accordance with the standards of Anhydrous Ammonia Commission, State of Louisiana. Customer agrees to return the equipment in substantially the same condition as received, normal wear and tear excluded.
“Unless written permission is granted otherwise Customer will not allow tanks covered by this agreement to be filled with any material other than ammonia supplied by the Company.
“This agreement is to remain in effect from Date until cancelled. Either party may cancel the agreement by giving 10 days notice in writing.” (Emphasis added.)
On the same day, November 13, 1956, Bradford also leased from the Dixie Company two 6,000-gallon storage tanks to be used for storing this type of fertilizer, which tanks were located on property selected and provided by Bradford, and in which property the Dixie Company had no interest.
Immediately after these lease contracts were executed, Bradford purchased a farm trailer in Jonesville, Louisiana, which trailer was taken to Monroe where the Dixie Company mounted one of the above-men *878 tioned 1,000-gallon tanks on it, the tank being attached to the trailer with bolts. No lights, reflectors or other signal devices were on the trailer when it was taken to Monroe, none were placed on the rear end of the trailer or on the tank by the Dixie Company while there, and none had been placed on either piece of equipment up to the time of the accident. It was this trailer and tank which later became involved in the accident with the White automobile.
As Bradford purchased fertilizer from the Dixie Company, the fertilizer was stored originally in the 6,000-gallon storage tanks, and from these large containers Bradford would fill the smaller tanks mounted on trailers, and he would then haul the smaller tanks to the places where delivery of fertilizer was to be made. In hauling fertilizer to his customers, Bradford traveled mainly on highways and public roads. His employee, in fact, was using a public highway in making a delivery of fertilizer to a customer at the time this accident occurred
The evidence further establishes that this type of fertilizer is used by farmers only a few months out of each year. Bradford used the trailer and tank involved in this accident for hauling fertilizer during the fertilizer seasons, but after each such season was over he customarily removed the tank from this farm trailer, and he used the trailer during the remaining portions of the year to haul cotton and other farm products. The evidence shows that on several occasions during the period which elapsed between the time the tanks were leased and the time of the accident, the tank involved in this accident was removed from the trailer, the trailer was then used for other purposes for awhile, and later the tank was remounted on it. The removal of the tank from the trailer, and the remounting of it on that trailer, were done by Bradford alone, without any assistance from the Dixie Company or defendant.
Although plaintiff contends otherwise, we think the evidence establishes clearly that the sales of fertilizer by the Dixie Company to Bradford were outright sales, for which Bradford was billed regardless of the disposition he may have made of it. The Dixie Company, in fact, filed suit against Bradford on one occasion for the unpaid purchase price of some fertilizer which had been delivered to him, and Bradford subsequently paid the amount claimed.
LSA-R.S. 3:1355 provides that no person shall engage in business as a dealer in anhydrous ammonia as a fertilizer, without first obtaining a permit, to do so from the Anhydrous Ammonia Commission of Louisiana. Neither Bradford nor Hudspeth had any such permit at the time this accident occurred, but the Dixie Company and defendant did have such a permit. Since Bradford did not have a permit, plaintiff contends that he was operating his fertilizer business under defendant’s permit, and that he was handling or selling the fertilizer as an agent for defendant.
No supervision or control of any kind, however, was exercised over Bradford’s operations by defendant or the Dixie Company. Bradford sold fertilizer to his customers, and these customers paid him directly for the fertilizer which they purchased. He did not account to Dixie for any of these sales, he transmitted no funds to Dixie except the amounts which he owed for fertilizer which he purchased for resale, no payments were made to the Dixie Company by Bradford’s customers, and the company had no interest in any of the accounts which customers may have owed Bradford for fertilizer. Neither Bradford nor Hudspeth received any wages, commissions or other remuneration from the Dixie Company or defendant, and they had no authority to bind and obligate those companies in any way.
We think the evidence clearly shows that neither Bradford nor Hudspeth were agents or employees of the Dixie Company or of defendant at the time this accident occurred. One of the prime ele *879 ments of an agency relationship is the existence of some degree of control by the principal over the conduct and activities of the agent, and the power of the agent to act for the principal. Donovan v. Standard Oil Co. of Louisiana, La.App., 197 So. 320 (Cert. denied); 3 Am.Jur.2d, Agency, § 3; 2 C.J.S. Agency § 1. In this case defendant exercised no control over the activities of Bradford or Hudspeth, and the latter had no authority to represent or to obligate defendant in business transactions with third persons. The fact that defendant had a permit to engage in business as a dealer in anhydrous ammonia as a fertilizer, while Bradford or his employee had no such permit, does not establish a principal-agent relationship between the parties. Any acts of negligence which may have been committed by Bradford or Hud-speth, therefore, are not imputable to defendant on the grounds that either was an agent or an employee of defendant.
Plaintiff contends further, however, that the Dixie Company was negligent in mounting the ammonia tank on Bradford’s trailer “with full knowledge that this trailer and tank would be used by Bradford or his employee on the highways to make deliveries of the liquid ammonia fertilizer.” It is argued that defendant, as a bailor, was under a duty to exercise reasonable diligence to see that the trailer and tank were in a reasonably safe condition, and that it was negligent in entrusting a dangerous article to his bailee, knowing that it would be used in such a manner as to endanger persons and property.
The general rule is that a bailor is not liable to third persons for their injuries resulting from the bailee’s negligent use of the thing bailed. One exception to this general rule, however, is that the bailor may be liable to third persons for defects existing at the time of the bailment, if the thing bailed is inherently dangerous and its character as such was known to the bailor but was not disclosed to the bailee, and if the injury is the reasonably foreseeable result of such defects. 8 C.J.S. Bailments § 40; 6 Am.Jur., Bailments, § 317; Lyons v. Jahncke Service, Inc., La.App. 1 Circuit, 125 So.2d 619.
The Lyons case involved an elevator which fell several floors resulting in injuries to the plaintiff. It was alleged, in substance, that the elevator was defective at the time of the bailment in that it was not equipped with brakes or other safety devices, and that the bailor was negligent in failing to inspect the equipment leased by it and in failing to warn plaintiff of the danger. The First Circuit Court of Appeal held that, under the allegations contained in the petition, the trial court erred in maintaining an exception of no cause of action filed by the bailor. In so holding the court, correctly we think, stated the applicable principle of law as follows:
“In conformity with the weight oí authority, we hold a compensated bailor of such movables is responsible to third persons for defects existing therein at the time of delivery to bailee of which he either had knowledge or could have discovered upon exercise of reasonable care. Such a bailor is not responsible to third persons for defects arising during the bailment period subsequent to delivery to bailee nor is he responsible to third parties for hidden or latent defects existing at the moment of delivery and discoverable only upon minute or extraordinary inspection or examination
“ * * * It follows, therefore, a bailor for value received who delivers such a vehicle or machine to his bailee possessed of a defect of which he was aware or could have detected by ordinary examination, without warning bailee thereof, is liable in damages to bailee or any third party injured thereby, provided such injury is the reasonably foreseeable result of such failure.”
The facts alleged in the Lyons case, however, are materially different from those *880 established in the instant suit. Here the “thing bailed” was the 1,000-gallon tank which was mounted on the Bradford trailer, and the evidence shows that there were no defects in that tank. It was equipped with the proper fittings and signs, and the tank had been inspected and approved by an inspector for the Anhydrous Ammonia Commission on May 5, 19S8, or just a few weeks before the collision occurred. The trailer was owned by Bradford, so defendant was not the bailor of the trailer. But, even if the trailer should be considered to be a part of the “thing bailed,” a conclusion which we think is not justified, there is nothing in the evidence to show that defendant knew that Bradford intended to use the trailer on public highways at night, and, on the contrary, there is some basis for concluding that he had no such intent.
After considering all of the facts, we conclude that there was no defect in the tank which defendant leased to Bradford, that defendant was not aware of any intent on the part of Bradford to use the trailer on public roads at night, if he in fact had any such intent, that the absence of taillights on the trailer was not a defect attributable to the bailor, that the injuries sustained by plaintiff in this case were not reasonably foreseeable by defendant at the time the tank was installed, and accordingly that defendant was not negligent in failing to install lights on the trailer when the tank was mounted on it. We further conclude that defendant was not negligent in failing to warn Bradford of the fact that there were no taillights on the trailer, for the additional reason that that fact was as apparent to Bradford as it was to defendant and Bradford is deemed to know the law relating to the operation of vehicles on public highways at night.
Plaintiff points out, however, that the Anhydrous Ammonia Commission of Louisiana, pursuant to the authority vested in it by LSA-R.S. 3:1354, adopted and published rules and regulations governing the sale, storage, transportation and handling of anhydrous ammonia in this State (Rules and Regulations, Anhydrous Ammonia Commission of Louisiana, August 7, 1957). Among the regulations so published is one providing that, “Every trailer or semi-trailer shall be equipped with side lights and tail lights.” (Section 6.9.3). Section 4(b) of these regulations also provides that, “All trailers using public highways are subject to state highway rules and regulations,” and one of the state highway regulations is that every trailer shall carry a red light at the rear (LSA-R.S. 32:293). Section 2.14.2 of the rules adopted by the Commission also provides:
“2.14.2 Fertilizer dealers shall be responsible for fitness, as to compliance with these Rules and Regulations, at the time of filling, of all systems which they actually fill, and shall exercise due care in cautioning their customers on the care, maintenance, and compliance with the Rules and Regulations of other systems owned by their customers and which they, the dealers, do not fill. * ¡I-. *»
Plaintiff contends that in view of the above-cited regulations and laws, and even though no bailor-bailee or principal-agent relationship existed, defendant is chargeable with independent negligence in failing to require that the tank and trailer be equipped with taillights at the time this 1,-000-gallon tank was filled, and that such negligence was a proximate cause of the accident, rendering defendant liable to plaintiff for the damages she sustained.
We do not interpret Section 2.14.2 of the rules adopted by the Ammonia Commission as making defendant responsible for the absence of taillights on Bradford’s trailer. That section makes dealers responsible for the “systems which they actually fill.” In using the term “systems,” we think the rule refers to containers, caution signs, valves and accessories, piping, tubing, fittings, flexible hose and safety devices, all of which are specifically referred to in other portions *881 of the same section of the rules. There is no reference in that section to trailers. Section 4 of the rules deals specifically with “farm trailer equipment,” and there is no specific reference to taillights in that section, except a general requirement that “all trailers using public highways are subject to State Highway Rules and Regulations,” which would be the case of course even though no such provision was contained in the Ammonia Commission Rules. Also, the evidence indicates that defendant did not fill this tank at any time shortly before the accident occurred. Bradford testified that the company had filled one of the two leased tanks almost two years before when this tank was mounted on the trailer. Since that time, however, the evidence shows that the tank has been emptied and refilled many times by Bradford, and it has been removed from the trailer and remounted on it on several occasions, also by Bradford. Under these facts, we conclude that defendant was not responsible for the “fitness” of the trailer at the time of the accident, and that it is not chargeable with negligence because of the fact that there were no taillights on the trailer at the time this accident occurred.
Since we have concluded that defendant is not liable to plaintiff for the damages which she sustained as a result of this unfortunate accident, it is not necessary for us to consider the other issues raised relating to quantum.
For the reasons herein assigned, we conclude that there is no liability on the part of defendants in this case, and that the jury erred in returning a verdict for plaintiff. The judgment appealed from, therefore, is reversed, and judgment is hereby rendered in favor of defendants and against plaintiff, dismissing this suit at plaintiff’s costs. All costs of this appeal are assessed to plaintiff-appellant.
Reversed and rendered.
On Application for Rehearing.
En Banc. Rehearing denied.