BAILES, Judge.
Plaintiff, individually and as confirmed natural tutrix of her three minor children, brought this tort action to recover damages for the wrongful death of her husband and father of the minor children. Plaintiff named as defendants Toups-Cook Truck Sales Inc., (Toups Truck and Tractor Service), Employers Mutual Liability Insurance Company of Wisconsin, hereinafter most of the time referred to simply as Employers, Asphalt Transport, Inc., and Allstate Insurance Company. The accident in which plaintiff’s husband, Fred C. Morgan, was killed involved a new Oldsmobile sedan driven by Mr. Morgan and in which he was the sole occupant, and an International truck on which had been constructed an “A” frame and winch and which was utilized as a wrecker, and a large Mack tractor unit which was in the tow of the wrecker. The Mack tractor was owned by Asphalt Transport, Inc., and insured with public liability coverage by Allstate Insurance Company. The wrecker was actually owned by Felix *368 H. Toups, d/b/a Toups Truck & Tractor Service and insured by defendant, Employers Mutual Liability Insurance Company of Wisconsin.
Although plaintiff sued Toups-Cook Truck Sales Inc., a defunct corporation of which Felix H. Toups was agent for service of process, as owner of the wrecker, Employers Mutual Liability Insurance Company of Wisconsin was sued as the insurer of the wrecker above described and appeared and answered the demands of the plaintiff in that capacity and status.
The trial court, in resolving the issue before it on the merits, awarded plaintiff, individually, a judgment against Employers Mutual Liability Insurance Company of Wisconsin in the amount of $22,000 and awarded plaintiff, in her capacity as tutrix of the three minor children the sum of $1,000 each. Plaintiff’s claims against Asphalt Transport, Inc., Allstate Insurance Company and Toups-Cook Truck Sales, Inc., were dismissed with prejudice.
Plaintiff appealed devolutively from the judgment dismissing her action against Toups-Cook Truck Sales, Inc., and from the amount of the award. Employers appealed suspensively.
There is relatively no dispute about the facts surrounding this accident, except the speed of the Morgan vehicle at the time it collided with the rear of the Mack tractor in tow by the wrecker.
It appears the Mack tractor owned and operated by Asphalt Transport, Inc., had a mechanical failure near Rayne, Louisiana, and the Toups wrecker was dispatched to tow it to Toups’ garage in Baton Rouge. The wrecker took the Mack tractor in tow, winched it right close behind it in a manner so as to elevate its front wheels from the roadway. Proceeding in that fashion, the Mack tractor in tow of the International wrecker proceeded toward Baton Rouge. At Opelousas, the driver of the wrecker determined the Mack tractor had no rear lights. On inspecting the rear lights he found that the red lens of the tail light were broken as well as the bulb. He had enough money to purchase a new bulb but not a red lens. He replaced only the defective bulb and proceeded with the Mack tractor in tow. It is beyond dispute that no red lights were visible to the rear from the Mack tractor itself, and none of the rear lights of the wrecker could be seen because the large cab of the Mack tractor concealed the same. One of the State troopers who investigated the accident testified the only light on these vehicles visible from the rear was a small white light which could not be seen at a distance greater than ten feet. He also testified the wrecker driver told him at the scene of the accident that he was driving between 15 and 20 mph, although the driver testified at the trial he was driving between 25 and 35 mph. We believe that the speed as fixed by the driver at the scene would come closer to approximating the correct speed than that fixed by him at the trial some time later. Further, the driver stated his truck was having mechanical difficulty and a loss of power. This, as well as the heavy load it was pulling, probably accounts for the slow speed of the wrecker.
The evidence shows the Toups wrecker and its tow were proceeding east toward Baton Rouge on Highway 190, a four lane hardsurfaced road with two lanes for east bound traffic and two lanes for west bound traffic, separated by a median about two feet wide and four inches high. Mr. Morgan, the decedent, was traveling in the same direction at a faster rate of speed than the wrecker. Just immediately prior to the collision, Mr. Morgan passed a mail truck driven by Roland Marcantel. As soon as Mr. Morgan passed to the left of the mail truck he turned back to the right east bound lane and collided with the rear of the Mack tractor. The evidence shows Mr. Morgan attempted to turn to the left to go around the Mack tractor. Contact was made between the left rear of the tractor and the right front of the Morgan Oldsmobile.
The impact between these vehicles damaged the left rear wheel and suspension of *369 the tractor and heavy and extensive damage was done to the Morgan vehicle! After the impact, the driver drove the wrecker, with its tow, to the right road shoulder, while the Morgan automobile went out of control, crossed the highway into the west bound lane, hit a bridge abutment and finally came to rest on the north side of the highway about 300 feet east of the point of impact. The automobile was a total loss. The investigating officers stated they found no skid marks indicating Mr. Morgan had applied his brakes prior to impact, but by marks left from his sliding vehicle they were able to trace its path to the place where it came to rest.
The negligence of the driver of the Toups wrecker is amply supported by the facts of the accident. Two large trucks, winched together and presenting an odd and unusual configuration with no lights visible to motorists approaching from the rear, traveling at a speed of from 15 to 20 mph on heavily traveled traffic artery, such as U.S. Highway 190, clearly demonstrates gross negligence. On a main highway of commerce in this time of rapid transit, a monstrosity such as these two trucks, lashed together, traveling at a slow speed of 15 to 20 mph in the open country where the speed limit was, at that time, sixty-five mph, presented an unusual and dangerous situation for a motorist such as Mr. Morgan. Vowell v. Manufacturers Casualty Ins. Co. (1956), 229 La. 798, 86 So.2d 909; Graham v. Hartford Accident & Indemnity Co. (La.App.1963), 159 So.2d 333; Mose v. Insurance Co. of State of Pennsylvania (La.App.1961), 134 So.2d 312; Fontenot v. LaFleur (La.App.1960), 124 So.2d 607, and Edwards v. Trahan (La.App.1964), 168 So.2d 365. Traveling at such a slow speed is almost tantamount to a stationary object.
After viewing the photographs of the wrecker and its tow, the Mack tractor, filed in evidence and in keeping with the above comments, we have no hesitancy whatever in holding that a proximate cause of the accident was the absence of lights on these vehicles to warn motorists approaching from the rear of the presence thereof on the highway. See LSA-R.S. 32:304.
The defendant, Employers, has pleaded contributory negligence on the part of Mr. Morgan in operating his vehicle at a grossly excessive rate of speed, not maintaining a proper lookout and not having his vehicle under proper control. The only charge of contributory negligence we need consider is that of excessive speed, for all the alleged acts of negligence on the part of Mr. Morgan stem from defendant’s allegation of excessive speed.
From our careful perusal of the testimony of the only two witnesses who testified as to speed of the Morgan vehicle, we must conclude that the trial court was correct in finding that the record does not support this contention of the defendant. One witness, Ben F. Polet, Jr., testified he was driving at a speed of 70 mph when the Morgan car passed him in the eastern edge of Erwinville, and the way in which he knows it was the Morgan car that passed him was that no other car passed him between Erwinville and the place of the accident. The Morgan vehicle was not within his view at all times and he would have no way of knowing that it was the Morgan vehicle which had previously passed him driving at a speed in excess of 70 mph. The trial court was correct in disregarding the testimony of this witness. The other witness who testified to the speed of the Morgan vehicle was Roland Mar-cantel. This witness testified he was driving his mail truck at a speed of 55 mph toward Baton Rouge about 500 to 600 feet in rear of the wrecker and its tow when Mr. Morgan passed him on his left. He stated that as soon as Mr. Morgan passed him, he, Morgan, turned to the right lane, and then turned back to the left in an effort to avoid striking the wrecker. The trial court refused to permit Mr. Marcantel to testify to his estimate of speed of the Morgan vehicle. We find this ruling correct. He stated he determined Morgan’s speed *370 “by the exhaust of his tail pipe the way it was exhausting that he was at a high rate of speed ratio on his engine.” Such an explanation is not understandable or intelligible. The witness demonstrated no expert knowledge or ability to judge, in a moment of passing, vehicular speed.
The trial court found defendant had failed to establish its allegations of contributory negligence of Mr. Morgan, and from our study and examination of the record we find no error in its ruling.
In her appeal from the judgment of the trial court, plaintiff contends the trial court erred in dismissing plaintiff’s suit against Toups Truck and Tractor Service, which business is owned and operated by Felix H. Toups. In assigning this alleged error, plaintiff fails to reckon with the facts established by this record. The evidence shows Toups Truck and Tractor Service is merely the trade name of the business and sole proprietorship conducted by Felix H. Toups, and aside from the legal consequence of plaintiff suing Toups-Cook Truck Sales, Inc., and obtaining service on Felix H. Toups, as registered agent, after the trial of this suit, plaintiff amended her petition to state a cause of action against Mr. Felix H. Toups. However, after defendant, Toups, obtained an order for a jury trial, plaintiff dismissed her action against Felix H. Toups. The judgment of dismissal reads as follows:
“IT IS ORDERED, ADJUDGED AND DECREED that plaintiffs’ supplemental and amended petition filed herein on November 16, 1964, making Felix H. Toups individually a party defendant, is hereby dismissed and this case is submitted to the Court for adjudication on the evidence presented on the trial on the merits on October 23, 1964, against the parties made defendants in plaintiffs’ original petition.”
By the express terms of this judgment of dismissal, which from the record was obviously prepared by the plaintiff, the defendant, Felix H. Toups, was dismissed from this action and no judgment whatever can be rendered against him herein.
Defendant, Employers, contends, as an assignment of error, the trial court erred in failing to hold that the dismissal of the suit as to Felix H. Toups was a dismissal with prejudice which amounted to a final judgment and which also operated as a dismissal as to Employers Mutual Liability Insurance Company of Wisconsin under the provisions LSA-C.C.P. Article 1673. This article provides:
“EFFECT OF DISMISSAL WITH OR WITHOUT PREJUDICE
“A judgment of dismissal with prejudice shall have the effect of a final judgment of absolute dismissal after trial. A judgment of dismissal without prejudice shall not constitute a bar to another suit on the same cause of action.”
To answer defendants’ complaint we must again refer to the judgment of dismissal itself to find the answer. This dismissal expressly dismissed Felix H. Toups from the action and expressly retained the other parties for it provides “ * * * and this case is submitted to the Court for adjudication on the evidence presented on the trial on the merits on October 23, 1964, against the parties made defendants in plaintiffs’ original petition.” (Emphasis added by the court.)
On the question of liability, we find the trial court correctly found liability on the part of Employers, under the terms and conditions of the policy of insurance it issued to Felix H. Toups.
As to the liability of Asphalt Transport, Inc., and Allstate Insurance Company herein, the trial court correctly absolved both parties from the negligent acts of the driver of the wrecker. The only basis for liability on the part of these parties for the negligent acts of a third party would be grounded in a principal-agency relationship.
*371 In the case of Mohr v. Schmitt (La.App.1966), 189 So.2d 46, this court stated:
“In all instances of vicarious liability, the right of control is sacramental. The basis for holding the principal for acts of the agent, the master for the servant, husband for the acts of the wife in her relationship to the community of acquets and gains, the parent for the acts of the child, all stem from the right of control. In the absence of the right of control, there is no liability.”
There is no showing of a right of control by Asphalt Transport, Inc., over the acts, conduct and demeanor of the wrecker driver, and in the absence of such proof, there is no liability. Also see Graham v. American Employers’ Insurance Company (La.App.1937), 171 So. 471; White v. Hudspeth (La.App.1962), 147 So.2d 874; and Donovan v. Standard Oil Co. of Louisiana (La.App.1940), 197 So. 320.
The remaining question to resolve is that of the adequacy of the award of the trial court. Under the terms of the policy of insurance issued by Employers to Felix H. Toups the maximum liability under the bodily injury coverage is $25,000 for each person injured (or killed) and $50,000 for each accident. Therefore, under the terms of the coverage, the maximum liability of Employers is the sum of $25,000. The trial court awarded plaintiff, widow of Fred C. Morgan, the sum of $22,000 and to the three minor children, the sum of $1,000 each.
Plaintiff’s assignment of error of the quantum of damages awarded is that the district court failed “to award plaintiff damages in an amount comparable to awards made in other death cases where the widow and children survived, and are solely dependent upon the deceased for a livelihood.”
The evidence shows decedent, Fred C. Morgan, was 39 years of age at the time of his death. He had a life expectancy of about 31 years. His wife, plaintiff, was 36 years of age. There were three children born of this marriage and at the time of their father’s death their ages were 16, 14 and 13. This couple were blessed with a happy and prosperous marriage which endured for more than 17 years. Mr. Morgan was a farmer and cattleman, engaged, together with his three brothers, in the operation of a plantation of 3600 acres in the delta near Tallulah. It was shown Mr. Morgan provided comfortably for his family. The record does not reflect the amount of income earned by Mr. Morgan, however, it was adequate to support his family and provide them with all of the necessities of life and generously of the luxuries.
Inasmuch as the claims of the plaintiff individually and as tutrix of her three minor children far exceeds the amount of coverage afforded by the maximum limits of the policy of insurance issued by Employers to Toups, the problem which confronts us is the division between the claimants of the amount available, that is, the sum of $25,000.
The proper manner of dividing the available $25,000 between the claimants is to determine the award to which each is entitled regardless of the limitation of the coverage available, and then to award to each his proportionate share of the $25,000.
We find the record amply supports an award to the plaintiff, widow of Fred C. Morgan, the sum of $75,000, and to each of the children the sum of $25,000. The total of the amount to which plaintiff is entitled, individually and as natural tutrix of the minors is the sum of $150,000. Therefore, claimants’ proportionate share of the available $25,000 is the following fractions, to-wit:
Mrs. Fred C. Morgan, one-half
Randy, one-sixth;
Catherine, one-sixth; and
Fred, Jr., one-sixth.
*372 Accordingly, Mrs. Morgan is entitled to receive, individually, the sum of $12,500, and in her capacity as natural tutrix for Randy Morgan, the sum of $4,166.67, for Catherine Morgan, the sum of $4,166.66, and for Fred Morgan, Jr., the sum of $4,-166.66, together with legal interest on each amount awarded herein from date of judicial demand until paid. Defendant, Employers Mutual Liability Insurance Company of Wisconsin, to pay all costs.
Judgment of the trial court is amended accordingly, and as amended, affirmed.
Amended and affirmed.