200 So.2d 136 (1967)
AUTOMOTIVE FINANCE CO., Inc.
v.
KESK, INC. and Lester Gross.
No. 2481.
Court of Appeal of Louisiana, Fourth Circuit.
June 5, 1967.
*137 Lemle & Kelleher, Carl J. Schumacher, Jr., and William S. Penick, New Orleans, for plaintiff-appellee.
Steeg & Shushan, Louis G. Shushan, and Jacqueline McPherson, New Orleans, for defendants-appellants.
Before REGAN, SAMUEL and BARNETTE, JJ.
SAMUEL, Judge.
This is a suit for $12,855.54, the alleged balance due on a contract entered into between plaintiff and Kesk, Inc., one of the two defendants, for the purpose of financing insurance premiums. The other defendant is Lester Gross, a vice president of Kesk, who signed a certificate on the reverse of the contract. By original and supplemental answer both defendants denied liability and reconvened for $18,512.80, allegedly erroneously paid to plaintiff under the contract. After trial there was judgment, on the main demand, in favor of plaintiff and against defendants, in solido, in the full amount as prayed and, on the reconventional demand, in favor of defendant in reconvention and against plaintiffs in reconvention, dismissing the reconventional demand. Defendants in the main demand have appealed.
The undisputed facts are as follows:
Over a period of time James J. Curro, an insurance agent in New Orleans, had written various insurance policies for Kesk, premiums for which had been financed first by Curro and then by plaintiff. Customarily the policies were held by plaintiff as collateral security with certain cancellation privileges. On January 9, 1963 Curro called at the Kesk office for the purpose of making arrangements to finance insurance premiums through plaintiff. As had been true in prior instances Curro had been carrying that financing himself and desired to be relieved thereof. In compliance with his request Kesk signed the contract upon which this suit is based.
The contract, on a printed form bearing plaintiff's name in large letters at the top, is between Kesk and the plaintiff. In pertinent part it states: It was executed for the financing of the premium, in the amount of $41,070.20, due on a $550,000 Lloyds of London fire, ec. insurance policy No. ARL 66777; the balance due on the insurance premium is $35,070.20; plaintiff is specifically authorized to pay that balance amount to the insurance agent, James J. Curro, Inc.; and the contract is in the total amount of $36,928.71, payable in nine equal monthly installments. In the contract Kesk represented to plaintiff that the described insurance policy had been issued. *138 The reverse of the contract contains a printed "Certificate of Agent" form which contains certain representations and warranties. The contract was signed by Kesk, through Gross, and Gross, in his individual capacity, together with Curro, signed the certificate.
Curro brought the completed contract to plaintiff which gave him its check in the amount of $35,070.20 payable to James J. Curro, Inc. and the check was deposited in that corporation's bank account. Several payments were made on the contract in suit and on another similar Kesk contract then held by plaintiff. When other payments were not made timely the matter was placed in the hands of plaintiff's attorney who made written demand for the balance due. In compliance with the demand, and following a conversation between plaintiff's attorney and Gross, Kesk made a payment of $14,723. The attorney then wrote acknowledging receipt of that amount and stating he wished to confirm their understanding that the balance of $18,609.71 would be paid in three equal monthly installments of $6,023.23 on specified dates. When the first payment was not made timely suit was threatened and Kesk made that payment of $6,023.23, leaving a balance of $12,855.54 due on the contract in suit. Kesk did not pay the balance and this suit was instituted therefor. The litigants have stipulated that the Lloyds of London policy described in the contract was never issued, the transaction was a fraud on the part of Curro, he later left New Orleans and his whereabouts are unknown.
In this court, as they did in the trial court, defendants rely on the following alleged facts which they attempted to prove by the testimony of Gross, a Richard Cohen, who on January 9, 1963 was a Kesk employee, and by the introduction of what they contend is a photocopy of the contract in suit made after the contract was signed by Gross and prior to the time it was given to Curro:
In checking through Kesk's insurance files and records during preparation for this law suit, defendants discovered that at the time it was signed by Gross the contract covered the financing of eleven different policies in the total amount of $35,170.20 and did not cover the financing of the Lloyds of London policy a description of which now appears on the face of the contract; and, also at that time, the eleven policies they thought they were financing had been cancelled without their knowledge. They believed the premiums on those eleven policies had been paid by Curro and the purpose of Curro's meeting with Kesk was to arrange financing of the same for Curro who no longer wanted to carry them himself. Gross and Cohen were present at this meeting when Curro presented to Gross a completed premium contract with plaintiff, on the face of which was written the words "See Schedule" and to which was annexed an adding machine schedule listing the eleven policies and the premium for each, amounting to a total of $35,170.20. Gross directed Curro to reduce all of the policies to one year terms which would in turn reduce the premiums and pay or help pay, the loan; and Curro agreed to do this. Gross then signed the document for Kesk and also signed the certificate. Some time following that signing by Gross, and before plaintiff issued its check to Curro's corporation, the contract was altered to its present form by removing the adding machine tape schedule showing the eleven policies to be financed and typing the description of the Lloyds of London policy under the words "See Schedule" and by changing some figures so as to show the balance to be $35,070.20 instead of $35,170.20 as it was when executed by Kesk.
Defendants contend: (1) Curro was acting in his own behalf, and not for Kesk, in securing the financing from plaintiff; alternatively, (2) if Curro was acting for Kesk in the transaction, he was properly the agent of both plaintiff and Kesk, having negotiated the transaction on behalf of *139 plaintiff; (3) the premium financing contract sued upon must fall for failure of consideration; and (4) as Gross was not a maker or borrower on the contract, there can be no liability on his part.
We find, as did the trial court, that the photocopy introduced by the defendants is not a photocopy of the original contract in suit. Two marks, possibly made by staples or something similar, appear at the top of the photocopy which do not appear on the original; what may be punch holes appear on the photocopy and are not found on the original; on the original the words "James J. Curro, Inc." and "Kesk, Inc." are typewritten through the lines on which they appear, while on the photocopy the same typewritten words appear above the lines; on the photocopy the signature "Lester Gross" clearly is different than the same signature on the original and is written through the line on which it appears while on the original that signature appears on the line. Obviously, the photocopy is not a copy of the original contract in suit. It may be a photocopy of a carbon copy ("/s/" appears before the Gross signature to the contract itself on the photocopy and not on the original) of a contract between Kesk and plaintiff; but there is no evidence supporting this supposition or establishing that the carbon copy photographed, if such be the case, was a copy of the contract in suit. However, the conclusions we have reached would be the same even if the contract, when signed by Kesk, did have reference only to the eleven policies as the defendants contend, and even if the same had not been altered by Curro prior to its delivery to plaintiff.
We do not agree with either of defendants' first two contentions, that in securing the financing from plaintiff Curro was acting in his own behalf or alternatively was the agent of both plaintiff and Kesk. The trial court concluded, and so do we, that as between plaintiff and Kesk, Curro was the agent of Kesk both for the purchase of the insurance and in the transaction by which the money was borrowed from plaintiff. The parties to the contract were plaintiff and Kesk, not Curro, and the initial obligation to repay the loan is signed only by Kesk. The record reveals that this, and in other similar, prior contracts, plaintiff treated Kesk as the obligor and relied on that corporation's financial standing in advancing the loan. We are satisfied that what actually happened is that Curro, as he had in past transactions, was in the position of advancing the cost of insurance coverage to Kesk and Kesk borrowed from plaintiff to reimburse Curro. The fact that Curro's agency, and not Kesk, received the proceeds of the loan is immaterial in view of the fact that the contract signed by Kesk specifically authorized plaintiff to pay the money to Curro's agency.
An agency relationship may be created by the parties thereto either expressly or by implication; the agency question usually, and certainly here, is basically a factual determination; and the essential test in determining whether an implied agency exists is the right of one person, the principal, to control the conduct of another, the agent, or the actual exercise of such control. Carter v. Adkins, La.App., 189 So.2d 49; White v. Hudspeth, La.App., 147 So.2d 874; Pitre v. Peltier, La.App., 122 So.2d 867; Busby v. Walker, La.App., 84 So.2d 304; Anderson v. Barber, 95 So.2d 386; Donovan v. Standard Oil Co. of Louisiana, La.App., 197 So. 320; Graham v. American Employers' Ins. Co., La.App., 171 So. 471; 2 C.J.S. Agency § 1; 3 Am.Jur.2d Agency § 3. As expressed in Graham v. American Employers' Ins. Co., supra, 473:
"Agency is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act."
The record contains no evidence that a principal-agent relationship existed between Curro and the plaintiff; as to plaintiff, *140 Curro and particularly Kesk were no more than customers. On the other hand Kesk did exercise control over Curro. As was the case in other similar transactions, Kesk executed the contract authorizing plaintiff to pay Curro's agency the money called for by the contract and gave the document to Curro for the purpose of bringing the same to plaintiff and obtaining the money. Kesk knew it (Kesk), and not Curro, was obligated to pay the contract amount to plaintiff. After the completed execution of the contract by the two signatures of Gross, one for Kesk as a contracting party and the other in his individual capacity on the certificate, the only things remaining to be done were delivery of the contract to plaintiff and receipt of payment to Curro's agency of the amount borrowed. Beyond question Curro was Kesk's agent for these purposes.
Defendants' third contention, that there was a failure of consideration relieving them of any obligation under the contract, is also without merit. The contention is based on the argument that the defendants received nothing for signing the contract; the eleven policies they thought they were financing had been cancelled at the time the contract was signed and the Lloyds of London policy described in the contract in suit was never in existence. The simple answer to the argument is that Kesk was not purchasing insurance from plaintiff; it was borrowing money. Failure to receive the insurance coverage was the fault of Curro and Kesk and not of plaintiff. In the contract Kesk specifically represented to plaintiff that the described policy or policies had been issued and authorized plaintiff to pay the sum of $35,070.20 to James J. Curro, Inc. Payment of that amount by plaintiff to James J. Curro, Inc. in accordance with the contractual authorization constitutes ample consideration for the contract.
Nor do we agree with defendants' third contention, that there is no liability on the part of Gross. Such liability arises as a result of the fact that Gross, in his individual capacity only, signed the "Certificate of Agent" form which appears on the reverse of the contract. Defendants do not deny that signature but they assert, and Gross testified, it was given because Curro informed Gross it was necessary to verify both his signature on the contract itself as the signature of a Kesk officer and the fact that the insurance had been ordered and the down payment made on the premium. In addition, it is argued that Gross signed the certificate because he thought he was assigning the eleven insurance policies as collateral security for "Curro's loan" from plaintiff.
As we have pointed out, Curro did not make the loan from plaintiff; Kesk did. And as we have also pointed out, the certificate signed by Gross contained representations and warranties. One of them is that the policy or policies listed on the reverse "* * * have been properly issued to be binding * * *" on the insurance company or companies. Another is that, in the event any statement contained in the certificate is untrue, upon demand made by the holder of the contract the signer of the certificate "* * * will immediately purchase this agreement for the full amount then remaining unpaid thereon." As the eleven policies defendants argue they thought they were financing had been cancelled at the time the contract was signed and the Lloyds of London policy described in the contract in suit never existed, clearly a very material statement contained in the certificate was untrue.
If the signed certificate is accepted as it reads and without further explanation, Gross is liable for the full amount of the unpaid balance. And we are satisfied that the trial judge did not accept the explanation given by the defendants, a conclusion with which we find no reason to disagree. We consider any further discussion of the liability of Gross unnecessary.
The judgment appealed from is affirmed.
Affirmed.