244 So.2d 255 (1971)
FIDELITY AND CASUALTY COMPANY OF NEW YORK, Plaintiff-Appellee,
v.
AETNA LIFE AND CASUALTY COMPANY et al., Defendants-Appellants.
No. 3305.
Court of Appeal of Louisiana, Third Circuit.
February 4, 1971.
Rehearing Denied March 4, 1971.
*256 Gold, Hall & Skye, by Jimmy M. Stoker, Alexandria, for defendant-appellant, Aetna Life and Casualty Co.
Neblett, Fuhrer & Hunter, by Robert B. Neblett, Jr., Alexandria, for plaintiff-appellee, Neil Maurer.
Stafford, Pitts & Bolen, by Richard Storms, Alexandria, for plaintiff-appellee, Fidelity & Casualty Co.
Edward B. Cloutman, III, Alexandria, Edward Roberts, Alexandria, Zeldon & Zeldon, by Max Zeldon, New Orleans, for defendant-appellee.
Before FRUGE, SAVOY and DOMENGEAUX, JJ.
SAVOY, Judge.
This case and the companion case of Maurer v. Fidelity and Casualty Company of New York, 244 So.2d 260 (La.App. 3 Cir. 1971), arose out of a multiple vehicle accident which occurred October 21, 1968, on U. S. Highway 165 at its intersection with Louisiana Highway 1203 in Kingsville, near Pineville, in Rapides Parish, Louisiana. A truck and trailer owned by A. A. Rabalais, Inc., being driven by its employee, James H. Tate, was proceeding in a southerly direction along U.S. Highway 165 and collided with a car crossing the highway owned and being driven by Joseph C. Daniels. After this collision, the truck proceeded a distance, struck an automobile owned and occupied by Neil A. Maurer which was parked at a service station. At the time, Maurer was working in the course and scope of his employment with Reproduction Supply Agency of Alexandria. Fidelity and Casualty Company of New York insured the Maurer car against loss by collision, and was also the workmen's compensation insurer of Maurer's employer.
In the instant case, Fidelity and Casualty Company of New York sued under its rights by subrogation for the amounts it paid on the collision loss to Neil A. Maurer, and for the medical and compensation benefits paid out under the workmen's compensation policy resulting from the personal injuries received by Maurer. Named as defendants in this case are Joseph C. Daniels, A. A. Rabalais, Inc., and its liability insurer, Aetna Life and Casualty Company.
In the companion case, Neil A. Maurer sued for personal injuries and damages; and named as defendants are Joseph C. Daniels, A. A. Rabalais, Inc., Aetna Life *257 and Casualty Company, and his own insurer, Fidelity and Casualty Company of New York, under the provisions of the uninsured motorist clause.
This case, the companion case cited above, and another lawsuit for damages by James H. Tate against Joseph C. Daniels, were consolidated for trial. After trial on the merits, the district court found that Joseph C. Daniels and James H. Tate were guilty of joint and concurrent negligence which caused the accident. In the instant case, judgment was rendered for plaintiff, Fidelity and Casualty Company of New York, and against defendants, Aetna Life and Casualty Company and Joseph C. Daniels, in solido, for $3,341.52, representing $1,296.24 for automobile damages, $1,615.00 for workmen's compensation payments, and $430.28 for medical payments, plus legal interest and costs. From this judgment Aetna Life and Casualty Company and A. A. Rabalais, Inc. filed an appeal to this Court.
In the companion case, judgment was rendered in favor of plaintiff, Neil A. Maurer, and against defendants, A. A. Rabalais, Inc., Aetna Life and Casualty Company, and Joseph C. Daniels, in solido, in the amount of $7,100.00, plus legal interest and costs. Judgment was further rendered in favor of Fidelity and Casualty Company of New York denying plaintiff's claim, but reserving to plaintiff all rights against said company under the uninsured motorists clause should judgment be unenforceable against Aetna Life and Casualty Company, but subject to a credit for the subrogation claim, and subject to the limits of coverage. From this judgment, the plaintiff, Neil A. Maurer, and the defendants, Aetna Life and Casualty Company and A. A. Rabalais, Inc. filed appeals to this Court.
The record shows the accident occurred at about 6:30 A. M. on October 21, 1968, on U. S. Highway 165 at its intersection with Louisiana Highway 1203, which is also known as Maryhill Road. Highway 165 runs generally north and south, and Maryhill Road runs generally east and west at this intersection. Just north of this intersection Highway 165 forms a "Y" junction with Military Highway. In traveling south on Highway 165, one would take the left or east fork of the highway to enter Military Highway or the right or west fork to continue on Highway 165. Maryhill Road ends where it joins the right or west fork of the "Y" intersection. There is a neutral area within the "V" area formed by the joining of Military Highway and Highway 165. This neutral area aligns with Maryhill Road, and would be used in proceeding to Maryhill Road from Military Highway. It is separated by two islands within the "V" area.
Defendant, Daniels, drove his car into the neutral area from Military Highway, stopped at the stop sign giving Highway 165 the right-of-way, and then proceeded across Highway 165 with the intention of proceeding westerly on Maryhill Road. At this time, the Rabalais truck was proceeding southerly along Highway 165, and the two vehicles collided.
The Rabalais truck continued after the impact in a southwesterly direction onto the concrete apron of Dupree's Esso Service Station located in the southwest corner of Maryhill Road and U. S. Highway 165, running over a small traffic island or neutral ground, and then into the station pumps and the automobile in which Neil A. Maurer was seated, pushing the Maurer car over 50 feet to the point where the vehicles came to rest.
The investigating state trooper located the point of impact on Highway 165 at a point 1 foot 4 inches from the west edge of the highway at its intersection with Maryhill Road. There were gouge marks and debris in the highway at this point. Highway 165 was 22 feet 1 inch wide at this point. The trooper found skid marks left from the truck 33 feet in length beginning north of the point of impact. He did not recall whether or not these skid marks proceeded beyond the point of impact. *258 The truck motor was still running when he arrived. On questioning the service station operator, he was told that Tate ran from the cab of the truck after it had stopped. Upon questioning Tate about this, Tate said he could not remember exactly at the time as to whether he was thrown out of the truck or whether he got out by himself. At the time the trooper arrived, Tate was lying next to the small island within the apron of the service station lot, at about the point where the truck had crossed the island.
The record shows the accident occurred at night, the area of the intersection was lighted by lights from two service stations, and the weather was clear and dry.
James H. Tate testified he had worked for A. A. Rabalais, Inc. for six years, and his route carried him through the same area every other day for the past three years. His tractor was pulling an empty 40 foot van which was 13½ feet high. He stated he stopped about a quarter of a mile from the "Y" intersection to check his tires, that he had only gained a speed of about 35 miles per hour and was in fourth gear of ten gears at the time of the accident. He first saw the Daniels car when it had "jumped" three or four feet across the line and was about 30 feet in front of him. He reached for the horn, but did not know whether he blew it, slammed on his brakes and attempted to swerve to the right to miss the car. The front of the car struck the left front of the truck. He testified he lost control of the truck, the door came open and he fell out; and the next thing he remembered was that someone put a covering over him, and he was lying against the curb next to the island. He noticed the car had its headlights burning. He estimated the car was five feet over the center line of the road, and his truck was partly off on the shoulder at the time of the collision. He was alone in the cab of the truck.
Joseph C. Daniels testified he left Military Highway, pulled into the neutral ground and stopped for the stop sign; he stated he looked right, then left, then straight ahead, and started into the intersection with the intention of going straight across Highway 165 into Maryhill Road. He stated that as he pulled out his boy hollered there was a truck, he slammed on his brakes and saw the truck about a foot from him; and the collision occurred. The right front fender of his car struck the truck, and his car spun around and was struck again in the rear. He testified he pulled out from the stop sign at a normal speed, and that he had only traveled eight to ten feet from the stop sign to the point of impact.
There was a depression in the highway which affected visibility to the north of the intersection in question. However, from the evidence, and the personal observations of the district court who looked at the area, the driver of a vehicle traveling in a southerly direction as Tate was driving could see the stop sign and a vehicle at the neutral ground in the intersection a distance of at least 300 feet from the intersection. There was nothing to obstruct a view of the intersection from this distance.
The judgments of the district court against Joseph C. Daniels have become final, as Daniels did not file an appeal in either case. The evidence establishes clearly that he was guilty of negligence which proximately caused the accident.
The issues raised in these appeals are whether or not James H. Tate was guilty of negligence which was a concurring and proximate cause of the accident; and whether or not the quantum awarded Neil A. Maurer was inadequate or excessive.
After reviewing the evidence in this case, we are of the opinion that Tate was guilty of speeding which was a proximate cause of the accident. Since we have reached this conclusion, it is not necessary to discuss the other ground upon which the trial court found liability, namely, the failure to keep a proper lookout.
*259 Appellants maintain that the district court erred in finding that Tate was driving the truck in excess of the speed limit of 45 miles per hour. In this connection, it is argued that Tate testified he was driving 35 miles per hour; that no other witness observed the speed of the truck until after the first collision; that neither Hattaway nor Dupree had a sufficient opportunity to judge the speed of the truck; that no foundation was laid for their testimony in that regard; and that evidence as to the distance the truck traveled after the first collision, and the damages caused was not sufficient to establish excessive speed.
Mary Hattaway, who lived across the street from the Esso Service Station, stated she heard a crash, she did not see the Daniels car, but saw the truck as it proceeded off the highway, over the curbs and across the island, hit the pumps, strike the parked car and continue until it stopped. She had been driving twelve years and stated, over objection, that she thought the truck was going faster than it ought to have been. She characterized the speed as very fast. She estimated the speed over 40 miles per hour although she could not state how much faster.
Mason Dupree, the owner of the Esso Service Station, testified he was at his desk, heard the crash, saw the Daniels car skidding sideways, and the Rabalais truck swerving. He stated he saw the vehicles impact a second time, then as he walked through the door of his station, he saw the truck hit the steep curb of the island, and come on across, striking the pumps, lights, and the Maurer car; and then travel another 50 or 60 feet to where the two vehicles stopped together. He stated the truck appeared to be going wide open. Over objection, he estimated the speed of the truck at 60 miles per hour. He stated the front bumper of the truck hit the pumps and struck the car broadside. He saw the driver in the truck as it came through the area of the station, and then noticed someone move from the cab of the truck toward the highway after the truck stopped. He thought this must have been the truck driver as there was no one else in the area. The motor of the truck was still running after the accident.
The testimony of Hattaway and Dupree was admissible upon showing that they drove vehicles and observed the speeds of vehicles. See Jones v. Southern General Insurance Company, La.App., 157 So.2d 335. The evidence shows these witnesses were in a position to observe the truck, and any objection to their testimony would go to the weight rather than the admissibility of their testimony. Inasmuch as the truck had braked and left skid marks of 33 feet at the first collision, it is reasonable to assume the truck was thereafter going slower than it was prior to the first collision. The distance the truck traveled, and the extent of the subsequent damages it caused substantiated the testimony of Hattaway and Dupree of excessive speed. The district court rejected the testimony of Tate that he was driving 35 miles per hour. This Court will not disturb the district court's finding that Tate was driving at an excessive rate of speed prior to the collision with the Daniels car. Each case must stand on its own facts, and this Court finds the evidence supports the holding that the excessive speed of the truck was a proximate cause of the second collision with the Maurer car, and the damages resulting therefrom.
The issue as to quantum pertains to and will be discussed in the companion case of Maurer v. Fidelity and Casualty Company of New York, supra. The damages sustained by plaintiff in the instant case were stipulated to by the parties in the amount as awarded by the district court.
For the reasons assigned, the judgment of the district court in the instant case on appeal is affirmed. All costs of the appeal are assessed to appellants.
Affirmed.