SAVOY, Judge.
This is a companion case to the case of Fidelity and Casualty Company of New York v. Aetna Life and Casualty Company et al., 244 So.2d 255 (La.App. 3 Cir. 1971), decided this date. See that case for a discussion of the facts and the holding as to liability.
The remaining issue is that of quantum. The district court awarded plaintiff $5,-000.00 for pain and suffering, and $2,000.-00 for future loss of wages and for physical disability, past and future. These awards were in addition to the award to plaintiff of $100.00 for his deductible loss on his car, and the special awards to Fidelity and Casualty Company of New York on its subrogation claim as set forth in the companion case.
Defendants maintain the award to plaintiff for general damages was excessive; that the evidence did not establish any loss of wages; and that the amount of $1,615.- *261 00 awarded to the compensation carrier should be deducted from the amounts granted plaintiff. Plaintiff maintains the awards were inadequate and should be increased.
Plaintiff, age 31, was rendered semi-conscious by the accident, was taken to the hospital by ambulance, where he was hospitalized for six days under the care of the treating physician, Dr. O. William Hilton, Jr., a general practitioner of Alexandria, Louisiana. While in the hospital, plaintiff was under sedation and was unable to leave the bed even to go to the bathroom. His injuries consisted of a severe blow to the head, a lumbar back sprain, and a cervical strain with associated muscle spasms in the neck and back.
Plaintiff testified to experiencing severe headaches and neck and low back pains. He was confined to a wheelchair in his home for approximately one month, after which he graduated to the use of crutches. After leaving the hospital, plaintiff received treatments from Dr. Hilton on October 29, on five occasions in November, on December 11, 1968; and on January 9, February 5, March 27, April 15, and May 21, 1969. He thereafter received chiropractor treatments from Dr. Robert Bois-vert on August 22 and 23, 1969; and on February 24, June 9, 10 and 13, 1970. Plaintiff was again treated by Dr. Hilton on April 23 and May 8, 1970. Dr. Hilton treated plaintiff a total of twenty times.
For the first seven months after the accident, plaintiff used a back support, took muscle relaxants, analgesics and tranquilizers. He has continuously used a hard board under his bed, and, with Dr. Hilton’s instructions, has taken exercises. Plaintiff testified he received full pay, less commissions, from his employer during the 32 working days that he was away from work because of his injuries. He was employed at the time of the accident as a salesman and repairman of reproduction machines. His work required him to do considerable traveling by automobile and to spend nights away from his home. He was also required to deliver the machines which were heavy, and to assume positions such as bending and stooping, which was deleterious to and would symptomize his back ailment, which was the principal source of his pain and discomfort. Plaintiff returned to light work for his employer in early January, 1969, but did not begin his work on the road until about four months after the accident. He testified he was still having trouble as of the time of the trial, about 21 months after the accident; and that he still had regular episodes of severe back pain which put him in bed for several days at a time. He testified he was unable to participate in golf and other activities which he previously enjoyed, and that he was very uncomfortable when driving an automobile for any distance, as required by his work. His injuries slowed him down, and he was unable to pursue his business as actively as previously, resulting in loss of commissions.
The testimony of Dr. Hilton was taken by deposition on July 7, 1970. Dr. Hilton diagnosed plaintiff’s ailment as a back sprain to the lumbar region associated with paravertebral muscle spasm bilaterally, and a neck strain with spasm of posterior cervical muscles bilaterally. He defined “spasm” as involuntary type tightness of muscles whenever touched or moved, and a “sprain” as an actual breaking or tearing of some of the ligamental fibers. The doctor testified that on his examinations in April and in May of 1970, about one and one-half years after the accident, there was still objective symptoms of pain, tightness and tenderness in the lumbar region. These two examinations were made at a time when plaintiff had just completed a long trip in his automobile. After long periods of driving, Maurer’s symptoms would recur, but were generally alleviated by rest or inactivity for 24 to 36 hours, and by sleeping on a firm surface. Dr. Hilton stated that Maurer’s condition could last for an indefinite period of time, and that extended driving would precipitate the *262 symptoms. He felt, however, that if plaintiff would follow faithfully a strict regimen of wearing the back brace, particularly on trips, of putting boards under the mattress even when on the road, and of following the exercise program he prescribed, that it would not be necessary for him to change his job, and that he should become completely symptom-free in a period of three to six months.
Dr. Hilton referred plaintiff to Dr. T. E. Banks, an orthopedic specialist, who examined him on June 3, 1970. At that time plaintiff was not suffering from acute symptoms. Dr. Banks found some remaining evidence of a lumbar strain compatible with plaintiff’s complaints of recurring symptoms. The doctor’s findings were minimal, and he felt the symptoms were not severe. He indicated an examination during an acute episode would give more information. He found some atrophy of the right thigh muscles, which might have some relation to the injury. He found some tightness in the back muscles. The fact that there were some findings one year and eight months after the injury indicated to Dr. Banks that plaintiff might require more specific treatment than he was getting.
Dr. Ray J. Beurlot, an orthopedic specialist, examined plaintiff on April 9, 1970, at the request of defendants. His findings were essentially negative. He found some tenderness around the lumbosacral areas. He found no atrophy in the legs. Dr. Beurlot found no objective evidence of any residual orthopedic disability. He acknowledged that plaintiff could still have symptoms of an intermittent nature, but felt plaintiff’s troubles would be of a minimal nature.
There is no specific information concerning, and the record does not establish that Maurer lost, any earnings from commissions. Nor does the evidence establish any future loss of wages. It is seen that plaintiff was paid his full regular wages by his employer during the time he was off work, and he also received workmen’s compensation benefits (not including medical) of $1,615.00, which Fidelity and Casualty Company of New York recovered by way of subrogation from defendants herein in the companion case. The district court awarded plaintiff general damages of $7,-000.00. Since there was no evidence of loss of wages, this Court finds that defendants herein, Joseph C. Daniels, A. A. Ra-balais, Inc. and Aetna Life and Casualty Company, are entitled to a credit against the judgment herein for $1,615.00. No credit is due, nor was a credit requested, for the additional special awards in the companion case of $430.28 medical, and $1,296.24 automobile damages, which items were established as special damages over and above general damages to plaintiff.
In considering the award for general damages, this Court finds, as did the district court, that plaintiff was examined by Dr. Hilton and Dr. Beurlot during a time of remission from acute symptoms, and there is a likelihood that plaintiff’s episodes of pain and discomfort will continue for an indefinite period. Even assuming the restricted prognosis of Dr. Banks, plaintiff’s difficulties will have lasted for over two years from the time of the accident. Plaintiff suffered considerably for the first seven months and intermittently thereafter. In addition to the pain he has suffered, he has endured the inconvenience of having to follow a regimen of using a back brace, of using boards under his mattress, and of taking exercises; and his difficulties have affected and restricted his work to some extent.
Considering the recent awards to others with similar injuries as those received by plaintiff, this Court finds that the award of $7,000.00 for general damages was well within the wide range of discretion afforded the district court; and accordingly, we find this award to be neither excessive nor inadequate.
. For the reasons assigned, the judgment of the district court is amended by reduc *263 ing it by the amount of $1,615.00, and in all other respects, the judgment appealed from is affirmed. All costs on appeal are assessed one-half to plaintiff, and one-half to defendants.
Amended and affirmed.