LOTTINGER, Judge.
This is a suit for damages sustained by the plaintiff as the result of a collision between the car he was driving and a bakery truck driven by defendant Jack B. Goudeau, and owned by defendant Wm. Wolf Bakery, Inc. which was insured by defendant Liberty Mutual Insurance Company. When the matter was before us originally we denied recovery being of the opinion that the truck driver was free fronr negligence. The Supreme Court, however,, granted writs in the matter, concluded that the truck driver was negligent and that the plaintiff was free from contributory negligence and hence entitled to recover. See, La.App., 89 So.2d 428 and 232 La. 569, 94 So.2d 671. Thus, the sole question before us now is that of quantum.
The plaintiff in his petition itemizes his damages as follows:
“Reasonable sound value of bis Ford automobile, which was so badly damaged as to be of no use whatever after the accident $ 895.00
Paid for wrecker service 15.30
Bill for Clinton Infirmary, Inc. for medical care and hospitalization 114.02
Bill of Dr. Charles McVea for examination 15.00
Bill of Drs. Robert and Geheber for X-rays 17.50
For loss of income and earnings due to accident 500.00
For physical pain and suffering and mental anguish 3,500.00
For permanent injuries 3,500.00 $8,656.82'*
We will consider the various items in the order set out above.
With respect to the automobile the record contains the testimony of two witnesses. One was Julian Kent, who had sold the car to the plaintiff for $895 on March 30, 1954. He estimated the value of the car as of the date of the accident (August 7, 1954) at the sum of $750. This witness at one time had offered the sum of $150 for the car for salvage. Counsel for plaintiff suggests in his brief that a fair award would be this witness’ estimate less his salvage offer, or the sum of $600. Counsel for defendant, on the other hand, point to the testimony of George D. Wilson, an expert automobile damage appraiser, who valued the car at $695 and suggests that the award should be that amount less the salvage value or the sum of $545. There is not a great deal of difference between the two estimates and considering that Kent was the more familiar with the vehicle we are of the opinion that substantial justice will be served by an award of $600 for the automobile.
*362 The next item is the bill for wrecker service in the amount of $15.30. The record contains the uncontroverted testimony of the plaintiff that that was the amount of his bill and the item should, therefore, be allowed.
The bill of Clinton Infirmary, Inc. in the amount of $114.02 is not contested by defendants and should, therefore, be allowed.
The next items are the bills of Drs. McVea and Gehebee in the amount of $30 and $17.50 respectively. Counsel for defendants, while not citing any authorities in support thereof, advances the argument that as these items of expense were not incurred for treatment, but rather in the preparation of the case for trial, they should not be allowed. We think counsel’s position to be correct. The expense was clearly incurred as an incident of trial and to our way of thinking, is no more an allowable item of damage than would be attorney fees. This item will, therefore, be disallowed.
We come now to the claim of $500 for loss of income and earnings. The record discloses that at the time of the accident the plaintiff was a cattleman, farmer and operator of a butcher shop. He owned some 2,000 acres of land, about 40 acres of which were in cultivation. His cattle herd numbered approximately 200 head. He was hospitalized until August 10th and, according to his testimony, was completely disabled for about 15 days and partially disabled thereafter. While so incapacitated he claims to have suffered the loss of $500 as the result of the following:
(1) Approximately 3,000 bales of hay rotted in the field because he could not get it in
(2) Cattle got through the fence into his corn crop and consumed about 100 barrels of corn.
(3) Bugs ate up one-half acre of a fall tomato crop.
 We are not disposed to allow this claim or any part of it. It is too well settled to require citation that one is obligated to minimize his damages. The record is completely barren of any evidence which would show why plaintiff did not employ someone to assist him in his farming and ranching activities while he was unable to conduct same and contains only the uncorroborated testimony of the plaintiff himself that the above enumerated things happened and that they cost him $500. Under the circumstances we feel that it would be putting a premium on negligence to allow the plaintiff anything at all for this alleged loss when he was apparently content to take no steps whatever to protect his holdings.'
The last items are those concerned with physical pain, mental anguish and permanent injuries. It was agreed that the written report of Dr. Paul Jackson of Clinton, Louisiana be introduced in lieu of his oral testimony. The report (P4) reads as follows:
“Paul Jackson, M.D.
“Rs. Phone 139
“Clinton Infirmary, Inc.
“Telephone 33
“Clinton, Louisiana
“October 25, 1955
“Medical report on Mr. Leon. Noland of Jackson, Louisiana:
“Mr. Noland came into my office in the Clinton Infirmary at Clinton, Louisiana, about 7 or 7:30 A.M. August 7, 1954. He gave a history of having been in an automobile or truck accident that morning. He was able to walk into the office and was entirely conscious and well oriented. He showed evidence of contusions and abrasion of the head, face, chest and left leg. He was hospitalized for further study and observation. The things that he complained of mainly were the abrasions of the forehead, right ear, left side of the chest anteriorly, and left leg near the knee. X-rays were taken that day *363 of his skull, chest and left knee, hut no evidence of bony injury was found.
“Mr. Noland was kept in bed that day and his general condition was satisfactory. The next day, August 8th, he was allowed to sit up some and was able to walk to the bath room and sit in the lobby. He had some generalized pain and soreness, but his general condition was good. On August 9th, he complained of some pain in his left chest anteriorly, but this was relieved with a mild sedative. On August 10th, his general condition was good and he felt better. Another X-ray of his chest was taken but no evidence of injury was found. He was discharged from the hospital on August 10th, to return to the office for further treatment and observation.
“He returned to the office on August 17th, 20, 25 and September 1, 8, 13 and 22nd. He made satisfactory improvement, but continued to have some • pain in his left chest anteriorly. On September 8th, he stated that he felt much better except for ulcer on left leg just below the knee which hadn’t quite healed. On September 13th, he complained of pain, soreness and tenderness of the left chest. He was seen again September 22nd, at which time he still had slight soreness and pain in the left chest anteriorly. It was felt that this would gradually disappear and I discharged him on or about September 25th.
“I wrote to the Insurance Company about Sept. 14th at which time I stated' it was my opinion that he would make a full and complete recovery in the next 3 or 4 weeks with no permanent disability.
“On May 13th 1955, I treated Mr. Noland for an abscess of the right lumbodorsal region, but in my opinion this had no connection with the injuries sustained in the wreck.
“On October 14, 1955, Mr. Noland returned to my office complaining of pain and soreness in the left chest. This pain is not constant but is worse when doing heavy work.
“It is my opinion that he had a rather severe bruise in the region of the junction of the 2nd and 3rd ribs and their cartilage with the breast bone. This has been quite painful and has interfered with his work, but I do not believe that it will cause permanent disability.
“Summary: Truck wreck on August 7, 1954 with general contusions and abrasions of head, face, chest wall and left leg. Most serious injury was the contusions of the chest wall in the region of the C costo sternal junction of the 2nd and 3rd ribs on the left. Recovery had been rather slow, but is believed to be complete at the present time.
“Paul Jackson
“Paul Jackson, M.D.”
Dr. Charles McVea, of Baton Rouge, Louisiana, examined plaintiff in February and October, 1955. The pertinent part of his testimony is as follows:
“Q. Now Doctor, without going into all the details in your reports tell us just what abnormal findings, if any, there were when you examined this man on February 24, 1955? A. Mr. Noland complained that he had been involved in a car wreck in August of 1954 and suffered a contusion of his head, chest and his left leg for which he was hospitalized three days. Examination showed that he complained of soreness of the left side of the chest at the site of the junction of the left second rib and the breast bone, and he told me that the pain was not constant, but that occasionally he' had sharp pain in this area and that this pain had occurred from time to time since the time of the accident. My *364 examination did not show any evidence of injury to his head or to the leg at the time of the examination on February 21, 1955. X-ray examination showed a minimal offset deformity of the tip of the left second rib near the breast bone. Physical examination showed a prominence of the junction of the left second rib with the cartilage joining the rib to the breast bone on the left side. It was not tender, but was quite evident. It was my opinion that Mr. Noland had suffered an injury to the chest resulting in minimal deformity of the junction of the left second rib with the cartilage in the sternum and that this was what was causing him his discomfort. (Tr. pages 18 and 19.)
* * * * * *
“Q. Did you or not reach an opinion as to whether or not he really did have pain from time to time because of that injury? A. I thought then and think now that it was possible he would have pain from time to time because of this injury. (Tr. page 20)
% ^ * ❖
“Q. Now, to come back to the complaint that he suffered with discomfort in his chest when he went about his work, did you believe there was a medical basis to support that complaint when you saw him October 17, 1955, or not? A. Yes, I think that his complaint of pain in the chest at times, would be compatible with the use of his arms in vigorous exercise such as he pointed out to me that he sometimes pulled himself up on his horse using his left arm and using his left arm in riding and going about his duties that he might occasionally have pain in his chest and arm.
“Q. Would you attribute that to the condition which you believe was caused by the trauma that he told you about? A. I think it was caused by it.” (Tr. page 21.)
Dr. McVea further stated under cross-examination that the plaintiff had completely recovered from the effects of the accident when he examined him on October 20, 1955. Dr. McVea further stated that on his two examinations the plaintiff did not complain to him of having severe pain but only complained of occasional pain.
The plaintiff (50 years of age at the time of trial on October 28, 1955) testified that he still had trouble with his left arm and chest, particularly in mounting a horse (which he had occasion to ride practically every day). He further stated that he had a scar on his leg left by a wound which had punched a hole in same.
From the above and foregoing we are of the opinion that the plaintiff did not suffer an extremely painful or disabling injury and think that he will be amply compensated therefor by an award of $1,-500. We do not think the pain and suffering in the instant case was near as much as that proven in the case of Jackson v. Firemen’s Insurance Co., La.App., 86 So. 2d 220 wherein we approved an award of $2,500 for personal injuries. See also White v. Travelers Ins. Co., La.App., 94 So.2d 564.
It was stipulated that the Court could fix expert witness fees for Drs. McVea and Gehebee without the necessity of testimony, and we herewith fix said fees at $50 each to be taxed as costs of court.
For the reasons assigned the judgment appealed from is reversed and it is now ordered that there be judgment herein in favor of the plaintiff, Leon A. Noland, and against the defendants, Jack B. Goudeau, Wm. Wolf Bakery, Inc. and Liberty Mutual Insurance Company in solido, in the sum of $2,229.32 plus interest at the rate of 5% per annum from date of judicial demand until paid and for all costs.
Judgment reversed.