EDWARDS, Judge.
This is a suit for personal injuries brought by Darrell Notto against Hugh C. Brown, III; Brown’s employer, Shannon Hardware, Co.; Shannon’s insurer, United States Fidelity & Guaranty Co. (USF & G); Robert Grimm; and Grimm’s insurer, Dairyland Insurance Company. After a trial on the merits, the jury found that Mr. Brown was solely responsible for the accident and awarded plaintiff damages in the amount of $120,000.00.
Notto brought this appeal corttending that the damage award is inadequate. Brown, Shannon and USF & G answered the appeal arguing that the damage award is excessive and also appealed the jury’s finding that Brown was solely at fault.* Grimm and Dairyland answered the appeal asserting that the liability determination and the damage award should be affirmed.
*253 FACTS
Darrell Notto was injured in an automobile accident which occurred on December 16,1983, when Robert Grimm’s van was hit by a truck driven by Hugh Brown and owned by Shannon Hardware. The truck was covered by a liability policy issued by USF & G in the amount of $500,000.00. Grimm’s van was insured by Dairyland Insurance Company in the amount of $5,000.00. Darrell Notto was a passenger in Robert Grimm’s van, along with six other fellow employees of McDermott Fabricating, Inc.
The accident occurred as Grimm was crossing the intersection of Louisiana Highway 70 and Old Highway 90. Grimm testified that he was westbound on Highway 70 heading towards the on ramp of the new Atchafalaya River Bridge. The evidence establishes that the light was green when he entered the intersection but that it turned yellow as he was crossing the five lanes of Highway 90. Several witnesses to the accident testified along with the drivers and the investigating police officer. The passengers in Grimm’s van testified that he did not increase his speed at any time while traveling through the intersection. They also confirmed that the only vehicle on Highway 90 that moved into the intersection before the impact was Brown’s truck.
Hugh Brown testified that he was on Highway 90 stopped at a red light. He stated that when the light turned green he glanced left and right, and then accelerated without looking left again. He admitted that there was a vehicle next to him waiting at the red light which did not move when the light changed. He stated that he could not see the entire intersection because the cars next to him and the layout of the road blocked his view. He said that the van swerved left to avoid him just before the accident. He testified that he went fifteen feet into the intersection but did not see the van until immediately before the accident. Brown’s guest passenger, Terry LeBlanc, testified that the traffic signal facing Brown’s truck was green when they entered the intersection but that he did not look to his left and so did not see the van until the impact occurred.
A driver stopped at a red light may not blindly enter an intersection at the moment the light turns to green. He has a duty to make a proper observation of traffic on the intersecting street before proceeding. He is negligent if he does not allow sufficient time for vehicles legally in the intersection to clear it. Shipman v. Tardo, 304 So.2d 381, 386 (La.App. 4th Cir.), cert. denied, 305 So.2d 124 (La.1974). The evidence establishes that the right front fender of Brown’s truck hit the middle of the right side of Grimm’s van. The front of Grimm’s vehicle was almost on the on ramp of the bridge, that is, his vehicle had almost cleared the intersection at the point of impact. The jury’s finding that Mr. Grimm had preempted the intersection before Mr. Brown entered it is not manifestly erroneous. See Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
QUANTUM
After the accident, Darrell Notto was taken to Franklin Foundation Hospital complaining of arm, shoulder, and neck pain. Plaintiff was initially treated by Dr. Horton, who referred him to Dr. LaBorde, a physical medicine and rehabilitation specialist. Dr. LaBorde treated plaintiff for his shoulder pain, but eventually referred him to Dr. Aurich, a clinical psychologist, and Dr. Michael Heard, an orthopedist. Plaintiff’s doctors performed numerous tests in an attempt to determine why he was experiencing pain. Mr. Notto had a thermo-gram on March 8, 1984, an EMG and nerve conduction study on his neck and left arm on March 21, 1984, a cervical myelogram, and an arthrogram on July 5, 1984. The results of all of these tests were normal. Although his doctors could not find anything wrong with plaintiff’s left shoulder, he continued to complain about the pain. He testified at trial that his neck stopped hurting a few months after the accident but the pain in his shoulder still bothers him.
Dr. Aurich diagnosed plaintiff’s problem as Chronic Pain Syndrome and developed a *254 treatment plan for him. He started Mr. Notto on a pain management program which consisted of relaxation training, biofeedback, and psychotherapy. He said that plaintiff exhibited physical tremors, was extremely restless, and cried from time to time when discussing his problems.
On July 10, 1984, Dr. Heard recommended that Mr. Notto go back to light duty work because he felt it would help to strengthen plaintiff’s shoulder. At trial, plaintiff testified that he went back to McDermott but they told him he could not return until he was fully recovered. Plaintiff did not attempt to find any other light duty work. On May 10, 1985, Dr. Heard noticed that plaintiff’s left shoulder was beginning to crepitate or grind with motion over his acromial clavicular (AC) joint. The doctor felt an AC joint resection might help plaintiff’s pain problem. This was the first and only time that any of plaintiff’s doctors found an objective problem with plaintiff’s shoulder. Up to this point, the doctors had been treating plaintiff’s subjective complaints of pain.
On September 4, 1985, Dr. Heard removed the end half inch of the clavicle and noted that the AC joint showed mild degenerative changes. Dr. Heard examined plaintiff in October and found no crepitation in his shoulder and declared the surgery a success. He released plaintiff to full duty on September 2, 1986. In his deposition, he stated that no additional surgery was indicated.
Dr. Aurich treated plaintiff for his nerves at Cypress Hospital in Lafayette one week before the trial. Mr. Notto claims that his nervous condition resulted from the automobile accident. The evidence establishes that Mr. Notto was treated for a nervous disorder in January of 1982. He was demoted by McDermott to a lower class sandblaster-painter because he refused to climb due to his nervous condition. He was also disabled from work in March of 1983 because of muscle spasms and headaches. Defendants also showed that plaintiff hunted deer with a 12 gauge pump shotgun after the alleged injury to his left shoulder.
Since it was stipulated that plaintiff’s past medical bills were $23,302.26, and the total award was $120,000.00, we must conclude that the jury found that his other items of damage totaled $96,697.74. Dr. Donald C. Cornwell, a consulting economist, testified that plaintiff lost $52,085.11 in wages between the date of the accident and the date of the trial, assuming that he was unable to work during that time period. Defendants contend that plaintiff was only fully disabled from the time of the accident, September 16, 1983, to July 10, 1984, and from September, 1985, to February, 1986, which would entitle him to $23,-000.00 in past lost wages. We find that the jury could have reasonably concluded based on the conflicting testimony of plaintiff’s doctors that he was capable of light duty work and that his past lost wage amounted to $23,000.00. The evidence also supports a finding that plaintiff is not entitled to any future wage loss because he did not prove he was incapable of working after September 2, 1986.
Plaintiff also complains that the jury erred in failing to award him $5,000.00 in future medical expenses. In Jordan v. The Travelers Ins. Co., 257 La. 995, 245 So.2d 151 (1971), the court noted that a plaintiff’s right to recover the cost of future medical treatments should not be denied because it is impossible to establish the nature and extent of the treatment that will be required or its exact cost. Dr. Aurich felt that plaintiff needed more counseling and Dr. LaBorde said that he needed more help, including a work hardening program. In Hayes v. Commercial Union Assurance Co., 459 So.2d 1245 (La.App. 1st Cir.1984), cert. denied, 462 So.2d 1247 (La.1985), the court found that the trial judge abused his discretion in not awarding future medical expenses to plaintiff where the doctors had testified that future medical services would be necessary. In the instant case, we note that the lump sum award was more than sufficient to include any future medical expenses the plaintiff might incur.
The jury’s primary purpose in awarding general damages in a personal *255 injury case is to adequately compensate the plaintiff for his injury under the facts shown to exist in his case. The question this court must address is whether the jury abused its great discretion in fixing the amount of the award. Coco v. Winston Indus., Inc., 341 So.2d 332 (La.1976). While other cases with similar injuries may be considered, the adequacy or inadequacy of the award must be determined by the facts and circumstances peculiar to the instant case. See Reck v. Stevens, 373 So.2d 498 (La.1979).
Because we have determined that the record does not reveal an abuse of discretion by the jury in making its award, it is not appropriate for this court to look to other similar cases to determine whether we would have awarded a different sum had we been the trier of fact. “Prior awards, as an aid in determining excessiveness or insufficiency, may be used only if the present award is shown to be greatly disproportionate to the mass of past awards for truly similar injuries.” Reck, 373 So.2d at 501.
After subtracting the special damage awards from the $120,000.00 verdict (including $5,000.00 for future medical expenses), the jury awarded plaintiff $68,-697.74 for his pain and suffering. We find that the automobile accident caused Mr. Notto a great deal of pain. He was hospitalized, operated on, and underwent two years of physical therapy. We also note however that Dr. LaBorde stated that by April of 1986, plaintiffs major complaint was boredom. After the successful surgery on his shoulder, plaintiff made no attempt to find any light duty work which he had been told by his doctor would help to strengthen his shoulder. While plaintiffs judgment is on the high side, it is not so high as to constitute an abuse of discretion. Accordingly, we affirm the award in favor of plaintiff for $120,000.00. Costs are to be borne by appellants.
AFFIRMED.

 Robert Grimm and Dairyland Insurance filed a motion to dismiss this answer on the basis that Brown, Shannon, and USF & G failed to file their brief timely. Their brief was due within forty-five days of the filing of the record in this court. Since their brief was not filed timely, this court notified defendants that their appeal would be dismissed if their brief was not filed on or before February 13, 1988. Defendants filed their brief on February 12, 1988. Accordingly, their brief was filed within the allotted time and their answer to the appeal is properly before this court.