STOKER, Judge.
These are consolidated cases * which arise out of a vehicular collision which occurred on April 23,1985 on Louisiana Highway 14 in Vermilion Parish. The plaintiff, Robert Burke, Jr., driving an 18-wheel tractor trailer owned by K-Oil Rental & Supply, Inc. (K-Oil), collided with a trash truck owned by the Town of Gueydan. The driver of the trash truck, Roy Brous-sard, was attempting to turn left into the town’s trash dump, located off of Highway 14, when the collision occurred. Mr. Burke was attempting to pass the trash truck on the left when Mr. Broussard turned into his path.
Mr. Burke filed suit against the Town of Gueydan and its insurer, National Fire and Marine Insurance Company, for damages which he sustained as a result of the collision. K-Oil Rental & Supply, Inc. filed suit against the Town of Gueydan for its property damages. The Town of Gueydan answered and reconvened against K-Oil and its insurer, Aetna Casualty and Surety Company, for its property damages. These suits were consolidated along with a suit filed by Clyde Thompson, Jr. against K-Oil. The claims of the Town of Gueydan, its insurer, and Clyde Thompson, Jr. were eventually compromised and a judgment of dismissal entered as to their claims.
After trial on the merits of the remaining claims by Burke and K-Oil against the Town of Gueydan, the trial court rendered judgment finding Burke 60% at fault and Broussard 40% at fault in causing the collision. The trial court awarded Burke special and general damages in the amount of $13,407.72 and awarded National Union Fire Insurance Company, as intervenor, the sum of $7,583.96 for property damages paid to its insured, K-Oil. These amounts reflect a reduction by the 60% of fault assigned to plaintiff, Burke.
The plaintiff, Burke, has appealed the judgment of the trial court. The Town of Gueydan has answered the appeal seeking affirmance of the judgment or in the alternative, reduction of the damage award to Burke and reduction in the percentage of fault allocated to Broussard. The plaintiff asserts by way of this appeal that:
(1) the trial court erred in failing to find Roy Broussard 100% at fault in causing the accident;
*429 (2) the trial court erred in allowing the Mayor of Gueydan to testify about the speed of the plaintiffs truck prior to the time of the accident;
(3) the trial court erred in finding that the plaintiff did not suffer a loss of wages as a result of the accident; and,
(4) the trial court erred in awarding an inadequate amount of general damages.
FAULT OF ROY BROUSSARD
The trial court, in its written reasons for judgment, set forth its factual findings concerning the proportionate fault of the parties and applicable law as follows:
“The evidence has established that on April 23,1985, Robert Burke was driving a 1979 GMC truck for K-Oil. He had just left the town of Gueydan when he came upon a slow-moving flatbed truck, owned by the town of Gueydan, hauling trash and traveling in the same direction. The Gueydan truck was driven by Roy Broussard, who was taking the trash to the town dump. Mr. Burke then tried to pass the flatbed truck on the left when Mr. Broussard, attempting to turn left into the dump, turned directly into the path of the K-Oil truck, and the collision occurred.
“The plaintiff contends the town of Gueydan, through its employee, Roy Broussard, was negligent in causing this collision and his resulting shoulder injury. He alleges Broussard was negligent for turning left in the way of his passing vehicle and for driving a vehicle with rear lights that were not visible.
“The town of Gueydan maintains that the plaintiff was negligent for traveling at an excessive speed and for failing to see the left turn signal on its truck.
“A left turn is generally a dangerous maneuver which must not be undertaken until the turning motorist ascertains that the turn can be made in safety. Attales vs. Shelter Mutual Insurance Company, 488 So.2d 474, ([La.App.] 3rd Cir. 1986). Broussard testified that he had seen the K-Oil truck approaching from the rear, and that the truck was in the same lane as he was. Furthermore, he did not notice the truck was trying to pass him until he had started to turn into the dump, just before the collision.
“The plaintiff testified that just before he began passing the Gueydan vehicle he blew his airhorn to let him know he was coming, and then he hit the horn right before the collision. This was verified by Clyde Thompson, a passenger in defendant’s truck, who also testified he heard the horn, before Broussard turned. Under the jurisprudence, a left turning motorist involved in an accident is burdened with a presumption of liability and the motorist must show he is free from negligence. Attales, supra at 476. The defendant in this case has not overcome this burden. Mr. Broussard saw the K-Oil truck behind him before he started to make his turn. When he began to make his turn the plaintiff had already begun his passing maneuver[,] thus the defendant should not have begun his turn until he could safely do so. This act amounted to negligence, which was in fact a cause of this accident.
“The Court rejects the contention of the plaintiff that he could not see the turn signal on the Gueydan truck because the rear lights were mounted four feet underneath the truck bed and were covered by a metal grate. The plaintiff failed to establish that the signal lights were not visible from the rear, especially from a distance of several hundred feet. The plaintiff further testified that he did not see the front turn signal until he was almost next to the flatbed truck, and furthermore, at that time it was not on. This testimony was directly contradicted by Roy Broussard, who testified he was almost 420 feet from the entrance to the dump when he put on his left turn signal. While there are some discrepancies in the testimony of the other witnesses as to the distance from the entrance to dump, Clyde Thompson, Elijah Stevens and Cleobule Simon testified that they saw the left turn signal on before the turn. For the above reason, the Court finds the plaintiff was negligent in failing to see the turn signal on the Gueydan vehicle.
*430 “The plaintiff testified that he was traveling about 50-55 mph. at the time of the accident, however, the Court finds it is more probable than not that the plaintiff was exceeding the posted speed limit when it occurred. This is based on the testimony of Manson Saltzman, the May- or of Gueydan, who had observed the K-Oil truck as it proceeded through Gueydan just prior to the accident. Mr. Saltzman testified that the truck was going at least 50 mph. while in town. Furthermore, Mr. Stevens testified that he observed the K-Oil truck just before the collision, and he thought it was going fast and noticed it was still gaining speed.
“The Court accepts the testimony of Mr. Saltzman and Stevens on this issue. The plaintiffs own testimony, in part, supports this finding. Although he denies speeding when he traveled through Gueydan, the plaintiff did say he was accelerating once he left the town. Based on the above facts the Court finds that the plaintiff was speeding at the time of the accident, and that such negligence was a cause in fact of the accident.
“Comparative fault requires the allocation of a percentage of fault between the parties. After considering the factors set forth in Watson vs. State Farm Fire and Casualty Insurance Co., 469 So.2d 967 (La.1985), the Court finds the plaintiff, Robert Burke, Jr., to be 60% liable and the defendant, Town of Gueydan[,] 40% liable.”
The plaintiff argues that the trial court’s ultimate factual conclusion finding him negligent for failing to see the trash truck’s left turn signal and that he was traveling at an excessive rate of speed are clearly wrong.
After careful review of the record before us, we find that the trial court’s conclusion that Mr. Broussard had in fact activated his left turn signal some 420 feet from the entrance to the town dump is supported by the evidence. While there is testimony that the signals could not be seen from directly behind the truck without stooping down, the plaintiff failed to establish that the signals were not visible from a distance of several hundred feet behind the truck. We cannot say that the trial court was clearly wrong in finding that the plaintiff should have seen the left turn signal on the trash truck and was therefore negligent.
The plaintiff raises as error the trial court’s admission of and reliance upon the testimony of Manson Saltzman, the Mayor of Gueydan, to establish that the plaintiff was traveling at an excessive rate of speed at the time of the accident. Mr. Saltzman testified over plaintiff’s objection that plaintiff was traveling at about 50 miles per hour through Gueydan, but that he did not observe the truck once it left the Town of Gueydan. The posted speed limit on Highway 14 is 55 miles per hour. Mr. Saltzman did not witness the collision. The only witness to the collision who testified as to the speed of the truck was Elijah Stevens. Mr. Stevens, a town employee located at the town trash dump site, testified that the truck was going fast and when asked to approximate its speed answered 55 to 60 miles per hour.
We find that the trial court erred in admitting the testimony of Manson Saltz-man concerning the speed of the K-Oil truck while in Gueydan to establish the speed of the truck on Highway 14. Mr. Saltzman was not in a position to observe the speed of the truck at the time of the collision and we find the trial court erred in giving any weight to his testimony to establish that the plaintiff was traveling at an excessive rate of speed at the time of the collision. Fidelity & Casualty Company v. Aetna Life & Casualty Company, 244 So.2d 255 (La.App. 3d Cir.1971); Jones v. Southern General Insurance Company, 157 So.2d 335 (La.App. 3d Cir.1963); Morgan v. Toups-Cook Truck Sales, Inc., 194 So.2d 366 (La.App. 1st Cir.1966).
The evidence in the record before us does not support the conclusion that the plaintiff was exceeding the posted speed limit of 55 miles per hour on Highway 14. The trial court was clearly wrong to so hold.
These findings lead us to reevaluate the trial court’s allocation of fault between the two drivers, Burke and Broussard. *431 The trial court correctly found that Mr. Broussard was negligent for failing to ascertain that his left turn could be made safely. Broussard testified that he saw the K-Oil truck approaching from the rear, but did not check on the whereabouts of the truck before attempting to turn. Brous-sard did not look into his rearview mirror until he had started his turn, although he was clearly aware of the approaching K-Oil truck. The evidence establishes that passing was permissible on the portion of Highway 14 where the collision occurred. Broussard’s truck had been traveling at a slow rate of speed, there were no posted signs or warnings indicating the entrance to the town dump and neither driver’s vision was obstructed. In our opinion the trial court was clearly wrong in its assessment of the percentage of fault as between the two drivers. Based upon the totality of the evidence, we hold that fault between the two drivers should be allocated at 70% for Roy Broussard and 30% for Robert Burke.
PLAINTIFF’S LOSS OF WAGES
The trial court found that plaintiff did establish that the injuries he complained of and his resulting surgery were a result of the April 23 collision. However, the trial court found that the plaintiff failed to prove that he suffered a loss of income as a result of the accident.
Plaintiff testified that due to an economic down turn he was laid off from his job at K-Oil shortly after the accident. He then went to work for Twin Brothers Marine for three and one-half weeks during August of 1985. Plaintiff testified that he left Twin Brothers because he could not physically do the work. He then drove an 18-wheel truck for approximately three months until its owner suffered financial difficulties. Plaintiff testified that he got a job as a security guard with Citadel Security in February of 1986. He worked at that job with some difficulty until his pain forced him to quit in May of 1986. This testimony was corroborated by Donald Laporte, plaintiff’s supervisor at Citadel Security. Plaintiff had surgery on his shoulder in June of 1986 and was discharged from his doctor’s care in September. While the relationship between plaintiff’s injuries and his employment history prior to May of 1986 was not established, it is clear that plaintiff’s injuries prevented him from working between May and September of 1986.
The trial court erred in failing to find that this time period, during which plaintiff could not work, was caused by plaintiff’s injuries from the accident. The trial court was clearly wrong in finding that plaintiff suffered no loss of income during those months duetto his physical problems, resulting surgery and recovery from surgery. A plaintiff is entitled to compensatory damages, such as lost wages, which he suffered which were caused by the accident in question. Jordan v. The Travelers Insurance Co., 257 La. 995, 245 So.2d 151 (1971).
Plaintiff testified that he grossed approximately $600 per month while working for Citadel Security. Donald Laporte testified that plaintiff would have been able to continue in Citadel’s employment had he not had the problems with his shoulder. We find that plaintiff is entitled to compensation for wages which he lost during the months of May through September of 1986 due to his shoulder problems. We accordingly award him wages for five months at $600 per month for a total of $3,000.
GENERAL DAMAGES
Plaintiff complains on appeal that the amount awarded by the trial court in general damages is inadequate. The trial court found that the plaintiff’s injury caused him pain and suffering for over a year and required surgery to correct and awarded $25,000 for general damages.
In order for this court to raise this award, we must find that the trial court abused its “much discretion” in making the award. Reck v. Stevens, 373 So.2d 498 (La.1979).
The evidence reveals that plaintiff was seen in the emergency room at Dauterive Hospital in New Iberia on the day of the accident. He did not seek further medical treatment until October 12, 1985. At that *432 time he consulted Dr. Robert LaHasky, a family practitioner in New Iberia. Dr. La-Hasky felt that the most likely diagnosis of plaintiffs problems and complaints was biceps tendonitis. He injected the plaintiffs left shoulder and prescribed an anti-inflammatory medication and heat treatments. Dr. LaHasky saw plaintiff three more times during December of 1985, with the same complaints, and recommended the same course of treatment. Dr. LaHasky thereafter referred plaintiff to an orthopedic surgeon, Dr. Robert Morrow.
It was Dr. Morrow’s opinion, after substantial testing was done, that plaintiff had a post-traumatic impingement syndrome and would require a surgical decompression. Dr. Morrow treated plaintiff conservatively with steroidal agents, anti-inflammatory medications and pain medications.
When plaintiffs pain and discomfort failed to improve, Dr. Morrow admitted the plaintiff to Our Lady of Lourdes Hospital in Lafayette for surgery. The surgery was successful in Dr. Morrow’s opinion and plaintiff was prescribed a course of physical therapy several weeks after the surgery. Dr. Morrow’s prognosis, at the time he was deposed, was that plaintiff would have a full recovery rather than any substantial disability. Plaintiff was discharged from Dr. Morrow’s care on September 30, 1986.
Plaintiff testified that as a result of his shoulder injury he suffered a great deal of pain which affected his ability to maintain a normal family life.
After careful review of the testimony presented, we cannot say that the trial court abused its much discretion in awarding $25,000 in general damages.
CONCLUSION
For the reasons expressed herein we amend in part the judgment of the trial court which assigned fault to the plaintiff at 60% and reduce that percentage to 30%; the fault of Roy Broussard is increased to 70%; we reverse that part which denied the plaintiff lost wages, and we affirm the award of general damages and add $3,000 in special damages for lost wages and amend the total amount of damages to reflect a 30% reduction attributable to the fault of plaintiff. The trial court awarded special damages to cover plaintiff's medical expenses in the amount of $8,519.31; this amount is not in dispute but is subject to the reduction. Accordingly, the total amount of damages awarded to plaintiff is $25,563.52. The remainder of the judgment is affirmed. Costs of this appeal are assessed equally to the plaintiff and the defendant.
REVERSED IN PART, AMENDED AND AFFIRMED AS AMENDED.
PER CURIAM.
Although this opinion bears a double caption and the opening sentence of the opinion refers to consolidated cases, it is clear from the briefs that the only appeal which was before us was the case of Robert Burke, Jr. v. Town of Gueydan. The record in K-Oil Rental & Supply, Inc. v. Town of Gueydan came up to us for the apparent reason that it contained entries applicable to both cases. The cases were consolidated at the trial level only. We have retained the double caption because we assigned our number 87-649 to the record in K-Oil Rental & Supply, Inc. as well as the record in Robert Burke, Jr. v. Town of Gueydan. Some pleadings, including the appeal and the answer to the appeal filed by the Town of Gueydan, employ the double caption. To avoid any confusion we have retained the double caption. Our reference in the foregoing opinion to these cases as consolidated cases was not meant to indicate that both cases were on appeal. As a consequence there is no judgment to be rendered in the K-Oil Rental & Supply, Inc. case.

See Per Curiam at the end of this case.