637 So.2d 1213 (1994)
Cynthia WHITE
v.
Wilson R. LONGANECKER, Sr.
No. 93 CA 1122.
Court of Appeal of Louisiana, First Circuit.
May 23, 1994.
*1214 Laurence Cohen, Morris Bart & Associates, New Orleans, for plaintiff-appellant Cynthia White.
William F. Kelly, Law Offices of Paul A. Eckert, Metairie, for defendant-appellee Wilson Longanecker.
Before WATKINS, SHORTESS, CARTER, GONZALES and WHIPPLE, JJ.
CARTER, Judge.
This is an appeal from a trial court judgment in favor of plaintiff.

FACTS
On July 16, 1990, plaintiff Cynthia White was acting within the course and scope of her employment as a rural route mail carrier when the vehicle she was driving was struck from the rear by a vehicle being driven by seventeen-year-old Wilson R. Longanecker, Jr. As a result of this accident, White sustained injuries to her back, neck, and right shoulder.
On January 16, 1991, White filed the instant suit for damages, naming as defendants Wilson R. Longanecker, Sr. and his wife, Colonita P. Longanecker, in their capacity as the parents of their minor son, Wilson R. Longanecker, Jr. Prudential Insurance Company, the alleged automobile liability insurer of the vehicle being driven by Longanecker, was also named as a defendant in the action. The petition alleged that the defendants were solidarily liable for the injuries White sustained as a result of the accident.
On July 6, 1992, the matter went to trial before a jury.[1] The jury rendered a verdict in favor of White, awarding the following damages:

(a) Personal injuries, including past,
 present and future pain, suffering,
 and loss of physical functions of her
 body $15,000.00
(b) Medical and hospital expenses to
 date 12,895.00[2]
(c) Loss of past earnings 6,500.00
(d) Loss or impairment of earning capacity
 5,000.00
 Total $39,395.00

*1215 White appealed, assigning the following specifications of error:
1. The trial court abused its discretion in failing to award sufficient general damages to compensate Ms. White for the severe pain and suffering and permanent impairment she sustained from the defendant's negligence.
2. The trial court erred in failing to award medical expenses for treatment that was undertaken as a direct result of the defendant's negligence.

GENERAL DAMAGES
Plaintiff contends that the trial court abused its discretion in the award of general damages. Plaintiff asserts that the general damages award of $15,000.00 was insufficient to compensate her for the "severe pain and suffering and permanent impairment she sustained from the defendant's negligence." The defendants, however, contend that there was no abuse of discretion because the evidence gave the jury "ample reason" to conclude that White's testimony was self-serving and highly suspect, that White was inflating her injuries, and that something other than the accident may have caused White's shoulder condition.
"General damages" involve mental or physical pain or suffering, inconvenience, loss of gratification or intellectual or physical enjoyment, or other losses of lifestyle which cannot be measured definitively in terms of money. Boudreaux v. Farmer, 604 So.2d 641, 654 (La.App. 1st Cir.), writs denied, 605 So.2d 1373, 1374 (La.1992). The primary objective of general damages is to restore the injured party in as near a fashion as possible to the state she was in at the time immediately preceding injury. McCray v. Abraham, 550 So.2d 244, 248 (La.App. 4th Cir. 1989). It is well settled in our jurisprudence that a tortfeasor takes his victim as he finds her. American Motorist Insurance Company v. American Rent-All, Inc., 579 So.2d 429, 433 (La.1991); McCray v. Abraham, 550 So.2d at 247. When a defendant's negligent conduct aggravates a preexisting condition, the victim must be compensated for the full extent of the aggravation. Miley v. Landry, 582 So.2d 833, 837 (La.1991); Epps v. City of Baton Rouge, 604 So.2d 1336, 1345 (La.App. 1st Cir.1992). The factors to be considered in assessing quantum for pain and suffering are severity and duration. Glasper v. Henry, 589 So.2d 1173, 1180 (La.App. 4th Cir. 1991), writ denied, 594 So.2d 1315 (La.1992); Anthony v. Hospital Service District No. 1, 477 So.2d 1180, 1186 (La.App. 1st Cir.1985), writ denied, 480 So.2d 743 (La.1986).
Before a court of appeal can disturb an award made by a trial court, the record must clearly reveal that the trier of fact abused its much discretion in making the award. LSA-C.C. art. 2324.1; American Motorist Insurance Company v. American Rent-All, Inc., 579 So.2d at 433; Coco v. Winston Industries, Inc., 341 So.2d 332, 335 (La.1976); Callender v. Delchamps, Inc., 542 So.2d 140, 144 (La.App. 1st Cir.1989). The initial inquiry must always be directed at whether the trial court's award for the particular injuries and their effects upon this particular injured person is a clear abuse of the trier of fact's much discretion. Reck v. Stevens, 373 So.2d 498, 501 (La.1979). Recently in Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. denied, ___ U.S. ___, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994), the Louisiana Supreme Court noted that:
[T]he discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that *1216 the appellate court should increase or reduce the award.
In the instant case, the testimony and medical records reveal the following:
Cynthia White testified that it was drizzling at the time of the accident and that suddenly she observed Longanecker's vehicle sliding toward her vehicle. White testified that, although she was wearing her seatbelt, she bounced and hit the back of the seat. White indicated that, after the accident, she began to experience neck and back pain and "everything was hurting." When the ambulance arrived, White was removed from the vehicle and taken to the emergency room at Riverside Medical Center, where various x-rays were taken, and she was subsequently released. Dr. Timothy H. Ewing, White's family physician, testified that he first examined White on July 17, 1990, at which time she had complaints of right shoulder pain, neck pain, headaches, and lower back pain. Dr. Ewing determined that she had strained the muscles of the neck, the right trapezius region, and lower back. According to Dr. Ewing, White's injuries resulted from the July 16, 1990, accident.
Dr. Robert Buckley VanBreemen, chiropractor, testified regarding his treatment of White, which began August 2, 1990. Dr. VanBreemen diagnosed White with a cervical whiplash injury with a cervical strain/sprain, cervical radiculitis (pain radiating from the nerve roots of the cervical spine), cervical dorsal syndrome (mild muscle spasms in the lower neck and upper back), and lumbalgia (lower back pain). Dr. VanBreemen opined that White's injuries were caused by the July 16, 1990, accident. Dr. VanBreemen recommended that White undergo spinal manipulation and physical therapy three times per week for approximately two weeks. After the expiration of the two week period, Dr. VanBreemen found that White's symptoms had not significantly improved, but he noted that she had continued to work throughout that time period. Dr. VanBreemen explained that White's symptoms increased with her job activity because, as a mail carrier, she had to reach around to the back seat of the vehicle to get the mail and reach out of the window to put the mail into the boxes, which continually aggravated her condition. Dr. VanBreemen recommended that White cease working for a week in order to reduce the irritation to her spine. He also increased the frequency of her treatments.
Gus L. Gutierrez, physical therapist, testified that he first treated White on September 25, 1990. His examination revealed that White had a protracted right shoulder, that she was limited in right rotation and back bending of her cervical spine, and that she had tenderness throughout her hip area. Although White had full range of motion in her lower back, she reported pain with forward bending. Gutierrez explained that he treated White for ten days with moist heat and electrical stimulation to the affected areas, as well as postural correction exercises. Gutierrez indicated that, on the ninth day of treatment, White did not have any lower back discomfort, but that she continued to have right shoulder pain.
Dr. Charles Walker, orthopedic surgeon, testified that he began treating White on October 9, 1990. Upon examining White, Dr. Walker found that she had pain originating in her AC (acromioclavicular) joint. A subsequent MRI revealed that the AC joint was impinging upon the supraspinatus, which is a part of the rotator cuff in the shoulder. Based on the medical history given by White, Dr. Walker opined that the enlargement of White's AC joint and resulting shoulder pain were results of the July 16, 1990, accident. However, on cross-examination, he acknowledged that it was "possible" that the enlargement resulted from repetitive trauma to White's shoulder arising from ten years of working as a mail carrier. Dr. Walker recommended that White undergo acromioplasty, a surgical procedure whereby the acromion is decompressed and the AC joint is partially removed. On February 5, 1991, Dr. Walker performed the surgery, without complications. However, according to Dr. Walker, White experienced severe post-operative pain, which was very difficult to control.
On February 27, 1991, Dr. Walker examined White and found that she had gained motion in her shoulder. He, therefore, recommended that she begin physical therapy. On March 4, 1991, White returned to Gutierrez *1217 (the physical therapist), complaining of a stinging sensation in her right shoulder. However, Gutierrez explained that the stinging sensation is a common aftereffect of acromioplasty. Gutierrez observed that White had a four-inch shoulder incision, which seemed to be healing well, but noted that there was some swelling in the area. Gutierrez testified that White frequently described her incision pain as "gapping," meaning that "it felt like something was pulling apart." Gutierrez indicated that he treated White for approximately four months following the surgery.
By June 3, 1991, although White had not regained full motion of the shoulder, Dr. Walker felt that she could return to work and "ease into some of the duties of her job." By July 29, 1991, Dr. Walker felt that White's symptoms were "finally beginning to improve." However, he did not feel that she was capable of returning to work at full capacity.
Dr. Walker continued to treat White through February of 1992, noting that she continued to experience neck, shoulder, and back pain. On March 25, 1992, Dr. Walker noted that White continued to have "minor achey (sic) pain in the shoulder that seemed to be correlated with activity" and that she had complaints of sensory changes in her shoulder. Dr. Walker estimated that White would have 5-8% permanent impairment of her right shoulder, but he did not place any physical restrictions on her. Dr. Walker testified that White might never be pain-free. Although Dr. Walker felt that White's symptoms were related to activity, he did not feel that her job as a mail carrier anatomically worsened her pain.
The testimony and medical evidence in the record reveal that White suffered shoulder pain for nearly seven months prior to the surgery. Finally, in February of 1991, White was able to undergo the acromioplasty, after which she experienced severe pain, requiring hospitalization longer than Dr. Walker had anticipated. Upon returning home following the surgery, White was unable to sleep in a bed due to pain caused by even slight movement; therefore, she remained in a recliner for two weeks, rarely getting up.
The record shows that White received treatment for her injuries for approximately twenty months following the accident, including approximately four and one-half months of painful physical therapy. At the time of trial (nearly two years after the accident), White was still experiencing shoulder pain. She testified that her shoulder tires very easily and that she is extremely fatigued at the end of a workday. Consequently, she is unable to do anything or go anywhere after work. White's shoulder is very sensitive and is now scarred and deformed, in that the top of her shoulder is flat. White stated that her job has become very stressful because she fears getting into another accident.
After carefully reviewing the entire record, we find that the general damages award is beyond, on the low side, that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances. Therefore, we conclude that the trial court's award of $15,000.00 in general damages was an abuse of the "much discretion" afforded the trier of fact. A review of the jurisprudence and the record in the instant case leads us to the conclusion that the lowest award appropriate under the circumstances is $35,000.00. See K-Oil Rental & Supply, Inc. v. Town of Gueydan, 535 So.2d 427 (La.App. 3rd Cir.1988); Notto v. Brown, 525 So.2d 251 (La.App. 1st Cir.1988); Perkins v. Ricks, 514 So.2d 180 (La.App. 4th Cir.1987), writ denied, 519 So.2d 117 (La.1988).[3] We, *1218 therefore, amend the judgment of the trial court to increase the general damages award from $15,000.00 to $35,000.00.

MEDICAL EXPENSES
White contends that the trial court erred in failing to award medical expenses for treatment directly related to the injuries she received following the automobile accident. More particularly, White asserts that the trial court failed to award medical expenses for treatment rendered by Drs. Robert Van-Breemen and Cornelius Gorman. At trial, the parties stipulated that White's employer had paid $12,894.82 in medical expenses. The jury determined that White was entitled to $12,895.00 for medical expenses.
A plaintiff may ordinarily recover reasonable medical expenses, past and future, which he incurs as a result of an injury. However, a plaintiff must prove the existence of the injuries and a causal connection between those injuries and the accident. The test is whether plaintiff has shown through medical testimony that more probably than not the subsequent medical treatment was necessitated by the trauma suffered in the accident. Jaffarzad v. Jones Truck Lines, Inc., 561 So.2d 144, 156 (La.App. 3rd Cir.), writ denied, 565 So.2d 450 (La.1990); Wells v. Allstate Insurance Company, 510 So.2d 763, 769 (La.App. 1st Cir.), writ denied, 514 So.2d 463 (La.1987). When a plaintiff alleges that he incurred medical expenses and that allegation is supported by a bill, unless there is sufficient contradictory evidence or reasonable suspicion that the bill is unrelated to the accident, it is sufficient to support the inclusion of the item in the judgment. Brightman v. Regional Transit Authority, 543 So.2d 568, 570-71 (La.App. 4th Cir.1989).
Applying these precepts to the instant case, we find that White clearly met her burden of proving her injuries by medical testimony. After reviewing the evidence in the record, we find that the jury clearly abused its discretion and made an inadequate award to White for her medical expenses. The jury apparently awarded White the amount of damages that the parties stipulated had been paid by White's employer. However, this amount did not include charges for treatment by Dr. VanBreemen (the chiropractor) or Dr. Cornelius Gorman (the vocational rehabilitation consultant).
With regard to the treatment that White received from Dr. VanBreemen, the record reveals that the symptoms for which Dr. VanBreemen treated White were consistent with the injuries she sustained and were related to the July 16, 1990, accident. Moreover, there is no evidence in the record to show that Dr. VanBreemen treated White for anything other than symptoms manifesting themselves as a direct result of the accident. The bills for this treatment total $1,514.00. We conclude that the jury erred in failing to award this amount to White. Therefore the judgment of the trial court is amended to award White $1,514.00 for Dr. VanBreemen's chiropractic treatment. See McCray v. Abraham, 550 So.2d at 248; Brightman v. Regional Transit Authority, 543 So.2d at 571.
With regard to Dr. Gorman's treatment of White, the record reveals that Dr. Gorman is a vocational rehabilitation consultant who saw White at the request of her attorney.[4] Dr. Gorman testified that his goals were to provide recommendations regarding White's employment and, "more importantly," to prepare an opinion for trial purposes. He took a personal history from White, had her fill out a profile regarding subjective history of physical functioning, and had her review a psychological services symptom checklist. Dr. Gorman reviewed the results of the tests with White and recommended that she modify her job to a lighter duty position. Dr. Gorman's bill totalled $1,820.00.
*1219 Items of medical expenses not incurred for medical treatment, but rather in the preparation of the case for trial, are not recoverable. Adams v. Security Insurance Company of Hartford, 533 So.2d 140, 150 (La.App. 1st Cir.1988), affirmed in part, reversed in part, 543 So.2d 480 (La.1989);[5]Noland v. Liberty Mutual Insurance Company, 96 So.2d 360, 362 (La.App. 1st Cir. 1957). Dr. Gorman's testimony reveals that he did not see White for medical reasons. Rather, White's attorney referred her to Dr. Gorman so that he could make a determination as to White's post-accident employability and job skills. Therefore, the trial court did not err in failing to award White the charges for Dr. Gorman's services from recoverable medical expenses.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is amended to increase the general damages award from $15,000.00 to $35,000.00 and to increase the award for medical expenses from $12,895.00 to $14,409.00. In all other respects, the trial court judgment is affirmed. Costs of the appeal are assessed against defendants.
AMENDED, AND, AS AMENDED, AFFIRMED.
GONZALES, J., dissents and assigns reasons.
GONZALES, Judge, dissenting.
I dissent from the majority opinion with regard to the increase in general damages. An award of general damages cannot be calculated with mathematical certainty, and the jury has great, and even vast, discretion in fixing the amount of general damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993). I cannot say from the particular facts and circumstances of this particular case that the award of $15,000.00 to this particular plaintiff for this particular injury was an abuse of that vast discretion; nor does the majority point to factual particularities which indicate that there was an abuse of discretion by the jury.
NOTES
[1] The defendants stipulated to liability. Therefore, liability was not an issue at trial.
[2] The jury verdict form awarded White $12,895.00 for medical expenses. The judgment, however, contains a typographical error in the amount awarded for medical expenses ($12,845.00).
[3] In Perkins v. Ricks, 514 So.2d 180 (La.App. 4th Cir.1987), writ denied, 519 So.2d 117 (La.1988), a forty-year-old woman sustained a contusion to her right shoulder joints when her chair collapsed, causing her to fall to the floor. She went back to work as a cosmetologist three weeks after the accident, and her medical treatment was terminated eight months after the fall. A jury originally awarded damages in the amount of $40,000.00, but the appellate court reduced the award to $20,000.00, noting that she had only three weeks of active treatment by her physician.

In K-Oil Rental & Supply, Inc. v. Town of Gueydan, 535 So.2d 427 (La.App. 3rd Cir.1988), the court awarded a man $25,000.00 for shoulder injuries which he sustained as a result of an automobile accident. The plaintiff incurred a post-traumatic impingement syndrome which required surgical decompression. The plaintiff had a full recovery without disabilities after one and one-half years following the accident.
In Notto v. Brown, 525 So.2d 251 (La.App. 1st Cir.1988), a man injured his shoulder in an automobile accident. He was hospitalized to undergo an acromial clavicular (AC) joint resection. He underwent two years of physical therapy and was released to full duty work as a painter/sandblaster roughly two and one-half years after the accident. He was released one year after the surgery. The court awarded him $68,697.74 in general damages.
[4] Dr. Gorman is not a medical doctor, but a Doctor of Philosophy.
[5] The supreme court reversed the appellate court insofar as it disallowed the vocational rehabilitation counselor's fees to be awarded as medical expenses. However, the supreme court specifically stated that the reason for allowing plaintiff to recover the expenses was because plaintiff's "treating physician recommended vocational counseling" for plaintiff. Adams v. Security Insurance Company of Hartford, 543 So.2d at 486. In the instant case, it is clear that White saw Gorman solely at the request of her attorney and primarily for litigation purposes.